In the Matter of SOUTH COUNTY REALTY, INC. II, Debtor(s).

Bankruptcy No. 86-3792.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 29, 1987.

Richard V. Ellis, Sarasota, Fla., for South County Realty, Inc.

C. Kathryn Preston, Tampa, Fla., for Mary Jane Gruber.

Thomas D. Shults, Sarasota, Fla., for Barnett Bank of Southwest Florida.

## ORDER ON MOTIONS TO DISMISS AND MOTIONS TO LIFT STAY FILED BY MARY JANE GRUBER AND BARNETT BANK

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matters under consideration involve two Motions to Dismiss the Chapter 11 Case and two Motions to Lift the Automatic Stay.

The Motions were filed by Mary Jane Gruber (Ms. Gruber) and by Barnett Bank (Barnett). Inasmuch as both Motions raise basically the identical issues, they will be considered jointly.

The Motion to Dismiss filed by Ms. Gruber seeks a dismissal of the Chapter 11 case pursuant to § 1112(b) for "cause", and more specifically, based on the alleged "bad faith" of South County Realty, Inc. II (South County), the Debtor involved in this Chapter 11 case. Ms. Gruber's Motion to Lift the Automatic Stay also seeks relief pursuant to § 362(d)(1) for "cause", although the term is not defined, as well as relief pursuant to § 362(d)(2) for lack of equity and that the subject property is not needed for effective reorganization.

The Motion to Dismiss filed by Barnett also seeks a dismissal of this Chapter 11 case ostensibly for "cause" although the Motion really does not articulate with any clarity a "cause" which would really warrant a dismissal. It merely states that it was filed for the purpose of delay and that the Debtor has no business to reorganize. The Motion to Lift the Automatic Stay is based on § 362(d)(2), alleging no equity and that the subject property is not required for effective reorganization.

The evidence presented at the final evidentiary hearing on the Motions under consideration reveal the following facts relevant to the resolution of the issues raised by the Motions:

The Debtor is a Florida corporation formed on March 4, 1982. According to the Articles of Incorporation filed with the Secretary of the State of Florida (Movant's Exh. # 4), the corporation was formed for the purpose of acting as principal agent or broker to sell, exchange, lease, improve, develop, repair, manage, and maintain properties in general, but the purpose of incorporation was basically a boiler-plate, all encompassing business venture primarily, but not necessarily, limited to real estate. According to the latest certification by the Secretary of the State of Florida dated December 19, 1986 (Movant's Exh. # 4), the last recorded members of the

board of directors were Irving T. Black, Cornelius Heemstra, Jr., and James R. Meeker.

The records of the Secretary of the State of Florida further indicate that South County was involuntarily dissolved for failure to file the annual report required by law (Movant's Exh. # 5) as of November 1, 1986.

It appears that Mr. Marshall Graves acquired all stock held by the original incorporators mentioned earlier, and he now claims to act as the chief executive officer, the sole director, and the sole stockholder of South County. The Petition initiating this Chapter 11 case was signed by Mr. Graves as the president of South County. As noted earlier, in spite of the broadly stated business purpose of this Debtor, there is no question that this Debtor never engaged in any business in a conventional sense. Its only involvement in business, if one would describe this as a business, is the acquisition and ownership of the real property involved in this controversy known as Jacaranda Square, Unit B, one of the units in the office complex.

Ms. Gruber, one of the movants, holds a first mortgage on Unit B, the subject property. The obligation on this mortgage, as represented by a final judgment of foreclosure entered on September 3, 1986, after the commencement of this Chapter 11 case, is $95,085.92 plus interest accruing at the judgment rate of interest, that is 12% per annum.

In addition, the subject property is encumbered by a second mortgage held by Barnett. Barnett, unlike Ms. Gruber, obtained a final judgment of foreclosure prior to the commencement of this Chapter 11 case, which judgment fixed to the amount secured by the mortgage represented by the notes, one in the principal sum of $86,000, the second in the principal sum of $40,000.

The final judgment entered on July 1, 1986 in favor of Barnett fixed the obligation owed to Barnett in the amount of $126,730.30 plus interest and costs in the amount of $6,082.36 for a total of $132,820.75. It appears that in addition there are lien claims filed against the subject property in the approximate amount of $1,500.00 (Movant's Exh. # 1). The subject property is the only asset of the Debtor; it is vacant, it produces no income for the Debtor, and its only possible value to the Debtor is a supposed exchange of this property for an interest in a partnership referred to as Regency Court Associates (Regency). This partnership is supposed to be the owner and developer of a strip shopping center located in Manatee County. It is to be noted that this proposed exchange of properties does not contemplate any exchange of funds, and most importantly there is no evidence as to what is intended to be done with the mortgage obligations owed to Ms. Gruber and Barnett Bank which are already in default after this proposed exchange.

In addition to the foregoing, the Debtor is delinquent in its obligations to pay periodic assessments to be paid by unit owners in the complex. The Debtor is indebted for this item in the amount of $1,800.00 based on non-payments of five quarters of $360.00 per quarter plus $141.00 for the assessment due for January, 1987. Of course, with the property being vacant, the Debtor does not maintain the premises which certainly does not improve the physical appearance of the complex.

The Debtor is not offering to furnish any adequate protection to Barnett or to Ms. Gruber for the obvious reason that it is unable to do so. As noted, it has no income, has no employees, does not sell or buy anything or render any services to anyone. It relies entirely on its claimed equity cushion in the subject property and its hope to turn this equity cushion into spendable funds in some unspecified time in the future. It is clear that its prospects of accomplishing this in the near future are highly problematical, if not nil.

■ The evidence presented on the value of the subject property is, of course, in conflict. The expert using market approach arrived at a value of $175,000. It

should be noted that this very same expert appraised the subject property twice before on behalf of Barnett; the first time in April, 1985 for $215,000, and again in December, 1985. The second appraisal placed $165,000 as the value of the subject property. In an attempt to explain the differences in appraised value, the expert stated that his first appraisal assumed an addition to one of the buildings increasing the total usable square footage from 960 to 2,018, and assumed that there would be a second floor added to the unit. This proposition is highly disputed by the Debtor. Be that as it may, it is clear that no second floor was added to the unit, but the other addition was, in fact, accomplished and the unit does, in fact, currently have 2,018 square feet of usable space.

The structure was originally constructed as a model home for a family residence, and it was later converted into an office condo. There is evidence in this record which indicates that a structure which is originally constructed as an office building has a higher value than a structure converted from a residential home to an office building.

The expert presented by the Debtor also relied basically on the market approach and appraised the subject property at $257,910.00. The comparables were not converted structures and were outside of the general market area where the subject property is located. For instance, one of his comparables is located in downtown Sarasota, which is almost completely built up.

■ Based on the evidence presented, this Court is satisfied that the subject property is worth at this time at least $98 per square foot which comes to $197,764 or $200,000 rounded off. As noted, the outstanding indebtedness is $95,085.92 in favor of Ms. Gruber, and $132,820.75 in favor of Barnett, for a total of $219,543.01. There is no equity in the property when one considers the combined indebtedness which, of course, is the proper method in determining lack of equity in conjunction with a motion seeking relief from the automatic stay under § 362(d)(2), *In re Certified*

*Mortgage Corp.*, 25 B.R. 662 (Bankr.M.D. Fla.1982), *rev'd District Court slip op.* (not generally reported), but not if one considers a motion for relief pursuant to § 362(d)(1) for lack of adequate protection. *See In re La Jolla Mortgage Fund v. Rancho El Cajon Associates,* 18 B.R. 283 (Bankr.S.D.Cal.1982).

■ Thus, if one considers the interest of the moving party, in this instance Ms. Gruber, only in the context of her motion for relief under § 362(d)(1), the Debtor might prevail relying on a very substantial equity cushion, but certainly not vis-a-vis Barnett, because it is clearly undersecured. This is so because undersecured creditors are not entitled to any adequate protection of their unsecured claim. *Timbers of Inwood Forest Associates, Ltd.,* 793 F.2d 1380 (5th Cir.1986), *affirmed en banc* 808 F.2d 363 (5th Cir.1987); *cf. In re Briggs Transportation Co.,* 780 F.2d 1339 (8th Cir.1985); *Grundy National Bank v. Tandem Mining Corp.,* 754 F.2d 1436 (4th Cir. 1985); *American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984).

■ The difficulty with the position of the Debtor is evident if the two motions are considered in the context of § 362(d)(2). This is so because the Debtor without doubt has no equity in the subject property when one compares the total outstanding debt encumbering the subject property which is in excess of $227,000 against the value of $200,000. Moreover, the Debtor is a dissolved corporation. While this defect might possibly be cured, it is evident that its only asset is the subject property which if lost presents a non-curable situation and which could leave the Debtor with nothing which could be reorganized. For this reason the property cannot possibly be needed for an effective reorganization.

■ It is without dispute that this petition for relief was filed by South County the day before the scheduled foreclosure sale, and it was filed for the sole and limited purpose of preventing Barnett from concluding its foreclosure and causing the subject property to be sold.

The courts are increasingly expressing serious concern and view with a jaundiced eye Chapter 11 petitions by debtors with a single asset and with no meaningful body of creditors other than those who hold a mortgage on the single asset. *See In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984). In this factual situation, the courts have frequently concluded that if the sole purpose of a petition for relief under Chapter 11 is to frustrate the secured creditors in their legitimate efforts to enforce their claims against the only asset of the debtor, the petition was not filed in good faith and, therefore, could be dismissed for "cause" pursuant to § 1112(b)(1) of the Bankruptcy Code.

The most comprehensive treatment of this subject is to be found in the case of *In re Little Creek Development Co.*, 779 F.2d 1068 (5th Cir.1986), where Judge Jones speaking for the Court set forth the conditions which usually exist in a Chapter 11 case and where the case is ripe for dismissal for bad faith filing. Judge Jones listed the following:

(1) debtor has one asset such as a tract of undeveloped real property;

(2) there are generally no employees except for the principals;

(3) there are generally no employees except for the principals;

(4) little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments;

(5) few, if any, unsecured creditors whose claims are relatively small;

(6) the property has usually been posted for foreclosure because of arrearages on the debt;

(7) the debtor has been unsuccessful in defending actions against the foreclosure in state court;

(8) the debtor and one creditor may have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

(9) allegations or wrongdoing by the debtor or its principals;

(10) the "new debtor syndrome" in which a one asset equity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors.

■ Applying the foregoing to the undisputed facts involved in this case, it is clear that this Chapter 11 was not filed pursuant to the rehabilitative provision of this Chapter, which is to create a statutory scheme to enable a financially distressed debtor to reorganize its financial affairs. There must be a genuine need and demonstative ability to reorganize or at least salvage values through liquidation, none of which are present in this case.

■ The real test that still remains is the presence of an honest intention of a debtor and some real need and real ability to effectuate the aim of the reorganization even though this might involve a total liquidation of the assets of the debtor. *In re Julius Roehrs Co.*, 115 F.2d 723 (3d Cir. 1940). While this is a pre-Code case, there is nothing in the Code nor in its legislative history which detracts from the viability of this principle stated by the Court of Appeals for the Third Circuit in *Julius Roehrs, supra*. Based on this, there is hardly any doubt that this petition was not filed in "good faith", thus it is ripe for dismissal for "cause" pursuant to § 1112(b) of the Bankruptcy Code.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motions to Dismiss the Chapter 11 Case filed by Barnett Bank and Mary Jane Gruber be, and the same are hereby, granted, and this Chapter 11 case is dismissed. It is further

ORDERED, ADJUDGED AND DECREED that the Motions to Lift the Automatic Stay filed by Barnett Bank and Mary Jane Gruber be, and the same are hereby, denied as moot without prejudice to the movants to enforce whatever rights they may have in a court of competent jurisdiction.