**In the Matter of ROY DAWSON RADIO CORP., INC., Debtor.**

No. 86–4427.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 3, 1987.

Malka Isaak, Tampa, Fla., for Roy Dawson Radio Corp., Inc.

Jim Heppner, Tampa, Fla., for Southwind Airpark Assoc., Inc., et al.

### ORDER ON MOTION TO DISMISS CHAPTER 11 CASE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion to Dis-

miss the Chapter 11 Case. The Motion, filed by a group of individuals and by a corporation known as Southwind Airpark Association, Inc., is based on the contention that the Petition for Relief of R. Dawson Radio Corp. (Debtor) was filed in "bad faith", thus it should be dismissed for "cause" pursuant to § 1112(b) of the Bankruptcy Code. The evidence presented in support of and in opposition to the Motion to Dismiss is as follows:

The Debtor is a Florida corporation founded in 1980 by Roy Dawson who is the only officer and the sole stockholder of this Debtor. The Debtor was formed for the primary purpose of owning and operating a private airport located in Polk County, Florida, designed to accommodate small private airplanes. The movants are owners of properties, some of whom actually reside on properties adjacent to this airfield. Roy Dawson, the principal of the Debtor, acquired this property on behalf of this Debtor corporation with funds obtained from liquidating his business assets in New Jersey by paying a substantial down payment for the purchase in the approximate amount of $65,000.00. The balance of the purchase was financed through American Bank and secured by a first mortgage in the amount of $95,000, which is now held by NCNB, and has an outstanding balance of $60,000. The monthly obligation to service this mortgage is $1,418.00 and it has been and still is current.

Soon after the Debtor acquired the subject property and took over the actual operation of the airfield known as South Lakeland Airpark, a serious dispute developed between Roy Dawson and the movants concerning the operation of the airfield. It appears that prior to the acquisition of the airfield the movants became holders of an easement properly perfected and recorded in the public records of Polk County, whereby they acquired substantial rights relating to the use of the airfield and its facilities. The parties who hold an easement of record filed a suit against the Debtor and Roy Dawson individually in order to enforce their rights claimed under their easement. After a full scale trial the Circuit Court for the Tenth Judicial Circuit in Polk County entered a detailed fact findings and a Final Judgment in favor of the Plaintiffs, who are the movants before this Court seeking a dismissal of this Chapter 11 case. The Final Judgment, in addition to granting an extensive injunctive relief to the movants, also granted a money judgment in favor of the movants, albeit in separate amounts for each movant.

In due course, the movants, now armed with a Final Judgment, applied for and obtained a Writ of Execution and delivered the same to the sheriff with instructions to levy on the primary, if not the sole asset, of the Debtor which was the real property used as the airfield. While it is not clear, it appears the levy was, in fact, made and the sheriff scheduled a sale of the property for October 1, 1986.

It further appears that on September 30, Roy Dawson contacted the offices of Ms. Isaak for the purpose of obtaining legal advice as to the methods available to prevent the loss of the property and to stop the sheriff's sale. There is hardly any question that Roy Dawson already had an idea that the only possible solution to his dilemma was to seek the protection of the bankruptcy court. This is evident from this record, simply because a Petition for Relief under Chapter 11 was, in fact, filed on the date scheduled for the sale by the sheriff, which of course, immediately stopped any further action by the movants in their quest to collect their respective money judgments obtained from the state circuit court.

It should be noted that while it is intimated that Roy Dawson and the Debtor filed a notice of appeal from the state court judgment, it is unclear whether such an appeal was, in fact, filed. There is no stay sought or obtained in the state court pending appeal. In this connection, it also should be noted that the Debtor paid monies to an attorney ostensibly for his services to prosecute this appeal, a payment made post-petition without authorization by this Court, in violation of § 330 of the Bankruptcy

Code and Bankruptcy Rule 2016, and to an attorney who was not authorized to represent the Debtor as required by § 327 of the Bankruptcy Code.

As noted earlier, the Petition was filed on October 1, 1986. It was not accompanied by the additional documents required by Bankruptcy Rule 1007, i.e. the Schedules of Assets and Liabilities, Statement of Affairs, and Statement of Executory Contracts, nor was it accompanied by a list of all creditors, an option available to the debtor who files nothing more than a bare petition, by virtue of Bankruptcy Rule 1007(c). As a result, this Court entered an Order to Show Cause on October 3, directing the Debtor to comply with the requirements of the Rules or face the consequences. The Schedules were filed on October 16 which reveal the following:

On Schedule A–2 there are three secured creditors listed. The first creditor was indicated to be the holder of a first mortgage on the real estate owned by the Debtor; one Mr. Lewis is indicated to hold a second mortgage on the subject property; and the third mortgage is shown in favor of Malka Isaak, counsel of record for the Debtor.

There is no dispute that the obligation owed to American which now appears to be owed to NCNB is a valid and bona fide obligation of the Debtor. This is clearly not the case, however, concerning the so called second mortgage held by Mr. Lewis, securing an alleged indebtedness in the principal amount of $150,000.00. This mortgage, executed by the Debtor on September 30, was granted without any documented consideration, and recorded on October 1. It is contended that it was to secure an antecedent obligation of the Debtor to Mr. Lewis who, during the previous years allegedly advanced various and sundry sums to the Debtor in order to enable the Debtor to purchase radio equipment needed in the business of the Debtor which he claims to be installing and repairing radio equipment used in connection with operation of aircraft.

Mr. Lewis, while conceding that many of the advances by him were repaid, contends that on the date the mortgage was executed the Debtor owed approximately $12,000 to $15,000 to him. There is nothing in this record which documents any of these advances, either by receipts, cancelled checks, or otherwise. To justify the size of the obligation intended to be secured by the mortgage lien, Mr. Lewis and Roy Dawson stated it also was meant to cover future advances. Be that as it may, it is crystal clear that the mortgage was executed for the specific purpose of acquiring an interest in the real estate, albeit not superior to the judgment lien of the movants; nevertheless a recorded encumberance preventing the holder of the judgment lien to acquire the subject property subject only to the relatively small first mortgage held by NCNB.

As noted, Schedule A–2 also listed Ms. Isaak as a secured creditor. There is nothing in this record to indicate that she ever obtained a mortgage on this property. However, it appears that one Gladys Standridge did obtain a mortgage from the Debtor, securing an alleged indebtedness to her in the principal amount of $4,500. It appears that Ms. Standridge is, in fact, the wife of Mr. Lewis, the holder of the second mortgage discussed earlier; that Ms. Standridge does not know anything about this transaction; and that the amount of the principal stated in the mortgage was the monies given by Mr. Lewis to Roy Dawson to pay attorney fees to Ms. Isaak.

Schedule A–3 on which the Debtor listed its unsecured debts reveals that with the exception of two creditors, one the attorney for the Debtor who handled the state court litigation, and the other a small trade debt, the balance of the creditors are the very same parties who were the plaintiffs in the state court action and who now seek a dismissal of this Chapter 11 case for cause, i.e. for the alleged bad faith of the Debtor in filing its Petition for Relief.

The term "cause", as used in § 1112(b) of the Bankruptcy Code, is not defined and it was obviously intended to be a flexible concept. This is evident from the legislative history of this section, which includes

the following statement discussing the concept of "cause" as used in this section:

The court will be able to consider other equitable powers to reach an appropriate result in individual cases. H.R.Rep. No. 595, 95 Cong. 1st Sess. 406 (1977); U.S. Code Cong. & Admin.News 1978, pp. 5787, 6362.

 Evidence of an intent to abuse or misuse the reorganization process of Chapter 11 is sufficient "cause" to warrant a dismissal of the case pursuant to § 1112(b). *In re 299 Jack Hemp Associates*, 20 B.R. 412 (Bankr.S.D.N.Y.1982); *In re Spenard Ventures, Inc.*, 18 B.R. 164 (Bankr.D.Alaska 1982). Furthermore, while there is nothing in the Code which authorizes a dismissal of a Chapter 11 case for lack of good faith, it is generally recognized that the concept of good faith is an implicit prerequisite to filing and maintaining a Chapter 11 case. *In re Victory Construction Co., Inc.*, 9 B.R. 549 (Bankr.C.D.Cal. 1981).

While no single factor is determinative of the issue, when the question of lack of good faith is raised the Court must examine all of the facts and circumstances of the case under consideration in reaching its decision. *In re Thirtieth Place, Inc.*, 30 B.R. 503 (9th Cir.1983). The transfer of assets to a non-debtor immediately prior to filing bankruptcy has been considered evidence of a bad faith, *In the Matter of Levinsky*, 23 B.R. 210 (Bankr.E.D.N.Y. 1982), and the absence of unsecured creditors has been held as an attempt to abuse the jurisdiction of the Court. *In re Groundhog Mountain Corp.*, 1 B.C.D. 923 (Bankr.S.D.N.Y.1975).

The tactics of the Debtor in the present case are similar to those found in the case of *In re Landmark Capital Co.*, 27 B.R. 273 (Bankr.D.Ariz.1983). The debtor in *Landmark* originally moved for a preliminary injunction in the district court to enjoin the sale of certain property subject to a deed of trust. When the district court refused to grant the injunction, the Debtor filed its petition. The Court found that the debtor filed its petition for the sole purpose of forestalling the movant from exercising a power of sale provision under the deed of trust. There were no substantial unsecured creditors other than the movant and the court determined that the debtor did not seek to reorganize its debt structure but rather the proceeding was in effect a two party dispute between the debtor and the movant which should be settled outside the jurisdiction of the bankruptcy court. The court held that the debtor's conduct was inconsistent with the purpose, spirit and intent of Chapter 11.

Based on the foregoing, this Court is satisfied that this case was not filed in good faith and, accordingly, should be dismissed for cause pursuant to § 1112(b) of the Bankruptcy Code.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss Chapter 11 Case filed by Southwind Airpark Association, Inc., et al, be, and the same is hereby, granted and the Chapter 11 case is hereby dismissed.