**In re RAD PROPERTIES, INC. Debtor.**

**No. 88–128–BK–J–11.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 30, 1988.

Jeffrey C. Regan, Jacksonville, Fla., for Fla. Nat'l Bank.

Ronald Bergwerk, Jacksonville, Fla., for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This cause is before the court upon the motion of Florida National Bank ("FNB") to modify the automatic stay to permit continuance of foreclosure proceedings against real property of the debtor. Hearing was held on February 24, 1988, at which time FNB proceeded pursuant to § 362(d)(1) of the Bankruptcy Code for relief from the automatic stay for cause based upon the debtor's bad faith filing of the Chapter 11 petition. Upon the evidence presented, the court enters the following findings of fact and conclusions of law.

*Findings of Fact*

1. This contested motion involves a request by a secured creditor for relief from the automatic stay to continue its mortgage foreclosure action in Case No. 87–602–CA in the Circuit Court of Nassau County, Florida, to enforce its lien on certain real property owned by the debtor.

2. The debtor is a Florida corporation which filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 21, 1988, one day prior to the scheduled hearing in the foreclosure action for summary final judgment and trial as to unliquidated damages in the form of attorneys' fees. The debtor filed no evidence in opposition to the summary judgment. The hearing was stayed upon the filing of the petition and the debtor has continued in possession of its property as a debtor in possession.

3. The debtor is a land developer whose sole asset is an approximately 315 acre planned unit development commercially known as Nassau Lakes located in Nassau County, Florida. Phase IA has been developed into 37 one acre lots of which 11 were sold by the debtor prior to filing the petition. Phase IB remains incomplete but is being developed into 26 additional one acre lots. The remainder of the acreage owned by the debtor is presently undeveloped land. The debtor owns one house in Phase IA which is used as a model home and sales office. Although the debtor's schedules report $40,601.00 in cash assets, the debtor has testified that only $178.00 in cash assets actually exist. Other than one inoperable tractor, there are no other assets of the debtor.

4. With the exception of the model home, the real property of the debtor is

encumbered by mortgages of two similarly situated creditors. FNB holds a mortgage which is a first lien on Phases IA and IB of Nassau Lakes and a second lien on the remaining undeveloped acreage. Rayland Corporation ("Rayland") holds the first mortgage on the undeveloped acreage. Another secured creditor, American Federal Savings & Loan, holds a first mortgage on the model home.

5. The debtor executed the note and the mortgage to FNB in the original principal amount of $1,065,000.00 on March 25, 1985, to develop Phases IA and IB of Nassau Lakes. The note and mortgage required monthly interest payments and matured by its terms on March 25, 1986. Because the debtor was unable to complete the development and sale of lots as planned, the FNB note and mortgage was renewed for one additional year with a maturity date of March 25, 1987.

6. The debtor defaulted under the terms of the FNB note and mortgage by failing to make the interest payment due on December 1, 1986. FNB agreed to forebear foreclosing the mortgage until maturity of the note to provide debtor with an opportunity to obtain refinancing from other sources.

7. On March 25, 1987, the FNB note and mortgage matured by its terms. FNB again agreed to forebear from foreclosing the mortgage until July 31, 1987, to provide the debtor with an additional opportunity to obtain refinancing. The debtor was unsuccessful in obtaining refinancing and on August 5, 1987, FNB filed its foreclosure action.

8. The debtor also defaulted on the Rayland mortgage encumbering the unimproved acreage owned by the debtor on December 23, 1986. Rayland filed an action to foreclose its mortgage in the Circuit Court of Nassau County in May of 1987, which action was set for trial on March 21, 1988.

9. Margaret Campbell is the sole shareholder and officer of the debtor corporation and there are no other employees. The corporation operates its offices out of a minivan borrowed by the debtor from Campbell Realty of Jax., Inc. ("Campbell Realty").

10. The debtor has no income other than from the sale of the developed lots in Phase IA of Nassau Lakes. Full payment of the entire net sale proceeds of each lot is required as a release price under the terms of the FNB mortgage. The debtor's principal has testified that the sale of all of Phases IA and IB are necessary to satisfy FNB's mortgage loan.

11. The debtor has been unable to complete construction of Phase IB of Nassau Lakes despite full funding of the development loan by FNB and heavy borrowing of an equal amount of funds from the debtor's sole shareholder, Margaret Campbell, and Campbell Realty, a corporation also solely owned by Margaret Campbell.

12. The debtor has relied primarily upon the efforts of Campbell Realty to market sales of the lots and the multiple listing service in Nassau County and neighboring Duval County. The debtor originally contemplated selling all lots within nine months of the FNB mortgage loan, but for various reasons did not begin selling lots until September, 1986. Despite nearly eighteen month since sales have commenced, however, the debtor has yet to complete development and sale of all lots in Phases IA and IB.

13. The debtor claims to have a contract for $135,000 to complete development of the 26 lots in Phase IB of Nassau Lakes, but has no assets for which to fund the contract without additional borrowings from the debtor's sole shareholder.

14. The debtor owes delinquent 1986 real estate taxes in the amount of $16,000.00, for which the debtor has no assets to satisfy. Additionally, the 1987 real estate taxes remain unpaid.

15. The model home owned by debtor in Phase IA of Nassau Lakes produces no income to the debtor and requires monthly mortgage payments of $925.00 for which the debtor has no funds to pay without additional borrowings from the debtor's sole shareholder.

16. The debtor has been unable to obtain refinancing of the FNB mortgage despite eight months of forbearance by FNB before bringing foreclosure suit and approximately 14 months since the debtor first defaulted under the FNB mortgage.

17. The debtor has few unsecured creditors who could benefit from a Chapter 11 reorganization. Almost 95% of the debtor's unsecured debt is owed to insiders or companies controlled by insiders of the debtor. Of the $1,133,600.00 in unsecured debt listed by the debtor, $773,000.00 is owed to the debtor's sole shareholder, Margaret B. Campbell, and $300,000.00 is owed to Campbell Realty, also solely owned and controlled by Mrs. Campbell. Another $40,000.00 is owed to Ronald Dabscheck for repurchase of shares of stock in the debtor corporation. Most of the remaining debt is owed to attorneys and accountants of the debtor.

18. The debtor has no income or ongoing operations to generate capital for continuation and reorganization and has no means of obtaining the same without incurring substantial additional debt and negative cash flow.

### Conclusions of Law

1. FNB argues the debtor has filed its petition for reorganization in bad faith and that bad faith filing constitutes cause for lifting the stay under Section 362(d)(1) of the Bankruptcy Code. Following the lead of the Eleventh Circuit Court of Appeals in *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984), this court has previously recognized that a bad faith filing is cause for relief from the automatic stay. *In re Sar–Manco, Inc.*, 70 B.R. 132 (Bankr.M.D.Fla.1986). Courts in other circuits have also recognized that relief from the automatic stay for cause includes the debtor's lack of good faith filing of a petition for reorganization. *See In re Little Creek Development Company*, 779 F.2d 1068 (5th Cir.1986). As recognized by this court in *Sar–Manco*,

> [T]he issue is whether the debtor's invocation of the protection afforded by Chapter 11 is for reasons consistent with

the congressional intent of rehabilitating and reorganizing businesses or whether it filed for the purpose of delaying and frustrating [FNB] from proceeding with foreclosure sale and realizing on [its] collateral. The burden of proof is on the debtor on all issues except the issue of the debtor's equity in the property. 70 B.R. at 139.

2. The Eleventh Circuit in *In re Natural Land Corporation*, 825 F.2d 296 (11th Cir.1987) has recently set forth factors which this court may consider in determining whether a petition for reorganization has been filed in bad faith. Those factors are as follows: (a) the lack of a realistic possibility of an effective reorganization; (b) evidence that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights; (c) whether the debtor is seeking to use the bankruptcy provisions to create and organize a new business, not to reorganize or rehabilitate an existing enterprise or to preserve going concern values of a viable or existing business; (d) the timing of the debtor's relevant actions; (e) whether the debtor appears to be merely a shell corporation; and (f) whether the debtor was created or the subject property transferred to the debtor, for the sole purpose of obtaining protection under the automatic stay of Chapter 11 by filing bankruptcy. 825 F.2d at 298.

3. The list of factors provided in the *Natural Land Corporation* case is not exhaustive, nor is there any single factor that will necessarily lead to a finding of bad faith. *Natural Land Corporation*, 825 F.2d at 298. Other more specific but similar factors, such as the following considered by the Fifth Circuit in *Little Creek*, often exist where there has been a finding that the debtor filed a petition for reorganization in bad faith: (a) the debtor has one asset, such as a tract of undeveloped or developed real property, encumbered by liens of the secured creditors; (b) there are generally no employees except for the principles; (c) there is little or no cash flow and no available sources of income to sustain a plan of reorganization or to make adequate

protection payments; (d) there are typically only a few, if any, unsecured creditors whose claims are relatively small; (e) the property has been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending foreclosure in state court or, alternatively, the debtor and creditor have proceeded to a standstill in state court litigation and the debtor has been required to post bond which it cannot afford; (f) bankruptcy offers the only possibility of forestalling loss of a debtor's property; (g) there are some times allegations of wrongdoing by the debtor or its principal; and (h) the new debtor syndrome exists in which a one asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors.

4. The factors cited above generally fall within three basic categories: (1) whether the debtor is actually an operational business enterprise which employs persons in the community and has ongoing business operations that may be rehabilitated or reorganized consistent with the congressional intent and protection afforded by Chapter 11; (2) whether the debtor has filed a petition for reorganization on the eve of foreclosure or similar judicial action and bankruptcy offers the only means of forestalling loss of the debtor's business; and (3) whether the debtor has a realistic probability of successful reorganization. After evaluating the facts of this case in view of these categories, the court concludes that most of the factors which typify a bad faith filing are present.

5. First, the debtor is not the type of business enterprise that may be reorganized or rehabilitated consistent with the congressional intent and protection afforded by Chapter 11. The debtor is essentially a one-asset estate comprised of partially developed real property encumbered by the FNB mortgage and other similarly situated secured creditors. There are also relatively few unsecured creditors who could benefit from reorganization. Virtually all of the debtor's unsecured debt is owed to insiders or companies controlled by insiders of the debtor. The remaining unsecured debt is owed primarily to accountants and attorneys of the debtor whose claims are relatively small.

6. The debtor is not an existing enterprise or going concern in the traditional sense. The debtor is solely owned and controlled by one individual and there are no other employees of the corporation. Moreover, the debtor operates its offices out of a borrowed minivan. This is not the type of business enterprise which can be reorganized consistent with the congressional intent and protection afforded by Chapter 11.

7. Second, it is also apparent that the filing of the petition for reorganization was made to forestall the loss of the debtor's property through foreclosure in state court. The debtor filed the petition less than one day prior to a hearing on FNB's motion for summary final judgment of foreclosure. The debtor offered no defenses or affidavits in opposition to summary judgment and waited nearly a year since maturity of the FNB mortgage loan to seek protection of the bankruptcy court. Moreover, most of the debtors remaining property was also being foreclosed under the Rayland mortgage, which case was set for trial two months after the filing of the petition. These facts are strong evidence that the debtor seeks merely to delay or frustrate the legitimate efforts of its secured creditors.

8. Third, the evidence presented at the hearing also indicates that the debtor has no realistic chance to reorganize. The debtor executed the FNB mortgage on March 25, 1985 as security for a loan to develop a portion of Nassau Lakes known as Phases IA and IB into one acre lots. The FNB mortgage originally matured on March 25, 1986 at which time the debtor found it necessary to seek a one year extension because it had been unable to develop and sell a sufficient number of lots to pay off the FNB mortgage. Originally, the debtor contemplated selling all lots within nine months, but for various reasons was unable to begin the sale of lots until September, 1986. Development of Phase IB remains incomplete. The inability of the

5 

debtor to complete the initial development has occurred notwithstanding the complete funding of the FNB mortgage loan and massive infusions of capital by Margaret Campbell in amounts equal to the FNB loan. Moreover, despite the extended periods of forebearance by FNB in foreclosing its mortgage, the debtor has been unable to obtain refinancing to pay off its secured creditors and continue development.

9. The evidence also indicates that the debtor has little or no cash flow or available sources of income to sustain a plan of reorganization. The only sales activity in Nassau Lakes relates to Phases IA and IB on which FNB holds its first mortgage lien. The remaining phases of Nassau Lakes are essentially undeveloped land. It will take the sale of all of Phases IA and IB to pay off the FNB mortgage. Under the terms of the FNB mortgage, the net proceeds of each sale must be paid to FNB to obtain the release of its mortgage lien. Other than the sale of lots, the debtor has no income with which to fund a plan of reorganization.

10. In order to successfully reorganize, it is clear that the debtor must have sufficient funds to complete development of Phases IA and IB of Nassau Lakes and to pay other expenses as well. Contrary to the $40,000.00 listed in the debtor's schedule, the debtor has testified that there is actually only $178.00 in cash assets. The debtor has testified that it has a contract for $135,000.00 to complete development of Phase IB, but has no funds to do so without additional borrowings. The debtor also has a $925.00 a month mortgage payment on the model home and $16,000.00 in delinquent real estate taxes for which it has no funds of its own to make payment. Thus, it is clear that the debtor has no income with which to generate capital for the continued development of lots and funding of a plan of reorganization.

11. The debtor has proposed as a means of funding the plan continued borrowings from the debtor's sole shareholder, Margaret Campbell. Prior to the filing of the petition, the debtor had already borrowed $773,000.00 from Mrs. Campbell and an additional $300,000.00 from Campbell Realty, a corporation also solely owned by Mrs. Campbell. These amounts already equal or exceed the total principal amount of the FNB mortgage loan which was originally intended to develop all of Phases IA and IB of Nassau Lakes. Yet, despite these cash infusions, the debtor has been unable to complete the development. If the debtor's sole shareholder has sufficient assets to fund a reorganization, it is difficult to understand why interest payments have remained delinquent on the FNB mortgage since December 1, 1986 and why the debtor has thus far been unable to complete development and sale of the lots.

12. For the reasons set forth above, the court concludes that the debtor's pending Chapter 11 case was filed in bad faith, which constitutes cause within the meaning of Section 362(d)(1) of the bankruptcy code for the lifting the automatic stay. The court will grant FNB relief from the automatic stay by separate order.