In re MARICAMP SQUARE ASSOCIATES, LTD., Debtor.

Bankruptcy No. 92–155–BKC–3P1.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

April 7, 1992.

Jeffrey P. Meyer, Los Angeles, Cal., for Maricamp.

Richard B. Webber, II, Orlando, Fla., for Lincoln Nat'l. Life Ins.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court on a Motion to Dismiss Case for Bad Faith and a Motion for Relief from Stay filed by The Lincoln National Life Insurance Company ("Lincoln"). A preliminary hearing on the Motion for Relief from Stay was held on February 15, 1992. The final evidentiary hearing on the Motion for Relief from Stay and the Motion to Dismiss for Bad Faith was held on March 10, 1992, and upon the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

Maricamp Square Associates, Inc. ("Maricamp"), Debtor, is the record owner and operator of an eighteen-store shopping center located at 3233 S.E. Maricamp Road, Ocala, Florida, consisting of land, buildings, improvements and related personal property ("the Property"). The Property is Maricamp's single asset.

Maricamp defaulted under the Note and Mortgage by failing to pay the monthly installment payment due in March, 1991, and all subsequent monthly installment payments.

On May 6, 1991, Lincoln made written demand upon Maricamp (the "Rent Demand") for, inter alia, the rents, proceeds and profits arising from or connected with the Property (collectively, the "Rents"), pursuant to Section 697.07, Florida Statutes, the Mortgage, and the Assignments of Rents and Leases.

On or about May 21, 1991, Lincoln commenced an action in the Circuit Court of the Fifth Judicial Circuit for Marion County, Florida, Case No. 91–2180 CAB, to foreclose the Mortgage (the "Foreclosure Action"). Lincoln's Motion for Default in the Foreclosure Action was granted by an Order entered on August 19, 1991 ("the Default Order").

On or about July 29, 1991, Lincoln filed a Motion for Rents in the Foreclosure Action requesting an order determining, among other things, that Lincoln is entitled to collect all Rents.

On October 25, 1991, the Court entered an Order in the Foreclosure Action grant-

ing Lincoln's Motion for Rents ("the Rent Order") and determined that Lincoln is absolutely entitled to all Rents on or after May 6, 1991. A certified copy of the Rent Order was admitted into evidence as Movant's Exhibit 1.

On January 3, 1992, a Final Default Judgment of Foreclosure ("Final Judgment") was entered. A certified copy of the Final Judgment was admitted into evidence as Movant's Exhibit 2. The Final Judgment (1) found that the allegations contained in the Complaint were deemed admitted by Maricamp by virtue of the Default Order, (2) foreclosed Lincoln's lien on and security interest in the real and personal property located in Marion County, Florida, and (3) determined that the Assignments of Rents and Leases are absolute, vesting in Lincoln all of the right, title and interest of Maricamp in the Rents.

Pursuant to the Final Judgment, a foreclosure sale of the Property was scheduled for January 29, 1992. Maricamp filed its voluntary petition for reorganization under Chapter 11 on January 13, 1992, ("the Petition Date") thus, staying the sale.

■ As a result of the Rent Demand, the Rent Order and the Final Judgment, each made and effective prior to the Petition Date, all of the Rents belong solely to Lincoln and Maricamp has no further interest in or entitlement to them. Accordingly, such Rents do not constitute "cash collateral" or "property of the estate" in this Chapter 11 case.

This Court entered Findings of Fact and Conclusions of Law and an Order Determining Rents, Proceeds and Profits from Mortgaged Property are Not Cash Collateral on March 10, 1992. This Court held the rents, proceeds or profits were neither "property of the estate" under § 541(a) of the Bankruptcy Code nor "cash collateral" under § 363(a) of the Bankruptcy Code, and therefore, the Debtor had no interest in such rents, proceeds or profits.

According to James Moscowitz' deposition ("Debtor's Depo"), Maricamp's representative, admitted into evidence as Movant's Exhibit 3 at the hearing, the Rents constituted Maricamp's only source of income. (Debtor's Depo, p. 44, 1.18–23).

Pursuant to the Final Judgment, Maricamp owes Lincoln $4,658,375.41, which amount accrues interest at the statutory rate of twelve percent (12%) from the date of the Final Judgment to the date of payment. The per diem interest rate is $1,552.79. The monthly interest accrual is $46,583.75. The total amount of accrued interest from January 3, 1992 through March 10, 1992 was $104,036.93 and the total liability on March 10, 1992 was $4,762,412.34.

According to Debtor's Depo, the Property is the single asset it owns. (Debtor's Depo, p. 12, 1.14–18, Attached Exh. 1—Schedule A). The value of the Property according to the Debtor's schedules is $4,347,823.64. The Property is being managed by an independent management company, M–FLA Consulting Group, Inc. Maricamp has no more than one employee other than its principals. (Debtor's Depo, p. 45, 1.19–25).

Maricamp's schedules reflect that there are no unsecured creditors involved in this case. The Debtor testified there were three small unsecured creditors totalling under $2,000.00. (Debtor's Depo, p. 45, 1.5–17). To date, the Debtor has not amended its schedules to reflect these three unsecured creditors. This is essentially a two-party dispute between Lincoln and Maricamp which has already been fully litigated in and determined by the state court.

## CONCLUSIONS OF LAW

Section 1112 of the Bankruptcy Code provides in relevant part as follows:

(b) on request of a party in interest ... and after notice and a hearing, the court may convert a case under this chapter to a case under Chapter 7 of this title or may dismiss a case under this chapter whichever is in the best interest of creditors and the estate, for cause....

11 U.S.C. § 1112(b).

■ Section 1112(b) gives discretion to the Court to make an appropriate disposi-

tion of the case when a party in interest requests. The Court is permitted to convert a reorganization case to a liquidation case or to dismiss the case, whichever is in the best interest of creditors and the estate. While this subsection lists several factors constituting "cause" for dismissal, the list is not exhaustive. The Court can consider other factors as they arise, and use its equitable powers to reach an appropriate result in each case.

■ Thus, the bankruptcy court's authority to dismiss a bankruptcy case is not limited to the grounds specified in § 1112(b) of the Bankruptcy Code. The Court has inherent power to dismiss where its jurisdiction has been improperly invoked. *In re St. Matthew Lutheran Church*, 1 C.B.C.2d 682 (Bankr. C.D.Ca.1980); *In re Fast Food Properties, Ltd.*, 5 B.R. 539, 2 C.B.C.2d 1159 (Bankr. C.D.Ca.1980). Moreover, § 1112(b) of the Bankruptcy Code permits the Court to dismiss a case for "cause."

Numerous cases have found a lack of good faith to constitute "cause" for dismissing a case. *In the Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir.1986); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984); *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988).

In several cases it has been recognized that a Chapter 11 case should be dismissed for "cause" if it appears that the petition was filed in bad faith. *Matter of Hulse*, 66 B.R. 681 (Bankr.M.D.Fla.1986); *Matter of Roy Dawson Radio Corp.*, 70 B.R. 588 (Bankr.M.D.Fla.1987); *Matter of South County Realty, Inc.*, 69 B.R. 611 (Bankr. M.D.Fla.1987); *In re Jay M. Weisman Irrevocable Childrens Trust of 1981*, 62 B.R. 286 (Bankr.M.D.Fla.1986).

When determining whether a petition was filed in bad faith:

[t]he courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Phoenix Piccadilly, Ltd., supra*, at 1394 (citing *In re Albany Partners, Ltd., supra*, at 674).

In reviewing cases for bad faith, the courts have considered many factors:

In finding lack of good faith, courts have emphasized an intent to abuse the judicial process or the purposes of the reorganization provisions. Particularly when there is not realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate. (citations omitted). *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984).

*In the Matter of Little Creek Development Co., supra* at 1072, the Fifth Circuit Court of Appeals provided the following guidelines:

Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum. Several, but not all, of the following conditions usually exist[:]

[1] The debtor has one asset, such as a tract of undeveloped or developed real property.

[2] The secured creditor's lien encumbers this tract.

[3] There are generally few or no employees, except for the principals.

[4] [There is] little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments.

[5] Typically, there are only a few, if any, unsecured creditors whose claims are relatively small.

[6] The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. [7] Bankruptcy offers the only possibility of forestalling loss of the property. [8] There are sometimes allegations of wrongdoing by the debtor or its principals. [9] The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.

In the case of *In re Rad Properties, Inc.*, 84 B.R. 827, 830 (Bankr.M.D.Fla. 1988), this Court summarized the factors identified in the foregoing cases by placing them into the following three categories:

1. Whether the debtor is actually an operational business enterprise which employs persons in the community as an ongoing business operation that may be rehabilitated or reorganized consistent with the congressional intent and protection afforded by Chapter 11.

2. Whether the debtor has filed a petition for reorganization on the eve of foreclosure or similar judicial action and bankruptcy offers the only means of forestalling loss of the debtor's business; and

3. Whether the debtor has a realistic probability of successful reorganization.

In this case, Maricamp's "bad faith" filing falls squarely within all three categories of cases addressed by this Court in *Rad Properties, supra.* Maricamp filed its petition for relief under Chapter 11 on January 13, 1992, sixteen (16) days before the scheduled foreclosure sale of the Property. Because the Property constitutes Maricamp's single asset, the filing of the Chapter 11 petition can be viewed only as a last minute attempt to forestall the loss of Maricamp's business. This is particularly so where, as here, the Foreclosure Action had been pending for approximately eight months. Maricamp has no more than one employee and a management company operates the Property.

Furthermore, Maricamp has no realistic possibility of successful reorganization. Maricamp admits that the Rents are its only source of income. (Debtor's Depo, p. 44, 1.18–23). By virtue of the Rent Demand, the Rent Order and the Final Judgment entered in the Foreclosure Action, and this Court's Order entered on March 10, 1992, the Rents are not property of the estate and cannot be used by Maricamp as cash collateral. *In re Carter*, 126 B.R. 811 (Bankr.M.D.Fla.1991); *In re 163rd Street Mini Storage, Inc.*, 113 B.R. 87 (Bankr. S.D.Fla.1990); *see also In re Aloma Square, Inc.*, 85 B.R. 623 (Bankr.M.D.Fla. 1988), *aff'd* 116 B.R. 827 (M.D.Fla.1990).

Thus, Maricamp is without any source of income with which to pay its operating expenses. Further, Maricamp is, and will continue to be, unable to maintain and repair the Property, prevent its deterioration, or pay for insurance and taxes. Nor will Maricamp be able to make adequate protection payments to Lincoln. Simply stated, Maricamp has no reasonable possibility of reorganization because it has no source of income to fund a plan.

In addition to the factors held to be dispositive in *Rad Properties, supra,* of equal importance are the following facts: (1) the Property is Maricamp's single asset; (2) the Property is encumbered by Lincoln's lien; (3) Maricamp's Schedules show that it has no unsecured creditors; (4) Maricamp has no more than one employee, except principals; (5) Maricamp has been unsuccessful in defending the state court foreclosure action; (6) Maricamp has no cash flow; (7) the Property was scheduled for a foreclosure sale; and (8) bankruptcy offered the only method of forestalling the loss of the property. *See In the Matter of Little Creek Development Co., supra.*

In the case of *In re Brandywine Associates, Ltd.*, 85 B.R. 626 (Bankr.M.D.Fla. 1988), this Court dismissed a chapter 11 case on the grounds of bad faith filing upon facts substantially like those before the Court in the instant action. In *Bran-*

*dywine,* the debtor was a limited partnership formed for the purpose of developing an apartment complex. The debtor's only asset was the apartment complex, the complex was encumbered by a mortgage held by the movant, the debtor had no material unsecured creditors and no direct employees. Further, the debtor was unable to generate sufficient cash flow to service its debt and the partners admitted that additional future funds would be unavailable. This Court determined that it was unlikely that the debtor would be able to service its debt in the future no less fund a plan of reorganization. Thus, the case was dismissed under § 1112 of the Bankruptcy Code.

The same result is compelled in this case. Indeed, Maricamp's circumstances are more dire than that of the debtor in *Brandywine.* Maricamp owns a single asset, that asset has been successfully foreclosed upon by Lincoln (the only secured creditor), and Maricamp lists no unsecured creditors. For months prior to the Foreclosure Action, Maricamp was unable to meet its debt service obligations and is currently without any income from which to provide adequate protection payments to Lincoln, to maintain and insure the Property or to pay taxes and operating expenses. Thus, like the debtor in *Brandywine,* Maricamp is hardly able to meet its ongoing operating demands, let alone fund a plan of reorganization.

It is clear that this Chapter 11 case was filed in bad faith and there is no reasonable prospect for Maricamp to reorganize its financial affairs as contemplated by Chapter 11 of the Bankruptcy Code. Accordingly, the case shall be dismissed under § 1112(b) of the Bankruptcy Code for "cause". The Motion for relief from the automatic stay is moot.