### In re 441 MIAMI GARDENS DRIVE PARTNERSHIP, Debtor.

Bankruptcy No. 92–11571–BKC–SMW.

United States Bankruptcy Court, S.D. Florida.

June 22, 1992.

Irving M. Wolff, Miami, FL, for debtor.

Paul Friedman, Miami, FL, for RTC.

### ORDER GRANTING RTC'S MOTION TO DISMISS BAD FAITH BANKRUPTCY FILING

SIDNEY M. WEAVER, Chief Judge.

**THIS CAUSE** came before the Court for hearing on June 12, 1992 upon a Motion to Dismiss the petition of 441 Miami Gardens Drive Partnership ("Debtor"), filed by the Resolution Trust Corporation (RTC") as Receiver for the Professional Federal Savings Bank, and after notice and hearing, the Court having examined the exhibits placed into evidence, reviewed the memoranda of law filed by each party, having heard the arguments of counsel and being otherwise fully advised in the premises, the Court finds as follows:

The debtor, a general partnership duly organized and existing under the laws of the State of Florida is the fee simple title holder of B.J.'s Shopping Center, located in Dade County, Florida. This property is the primary asset of the debtor and is encumbered by a first mortgage held by the RTC. The RTC's security interest covers the real and personal property including all rents, income, leases, issue and profits generated by the property.

On March 27, 1991, the RTC instituted mortgage foreclosure proceedings against

the debtor in the United District Court for the Southern District of Florida in a case styled *RTC v. 441 Miami Gardens Drive, et. al.*, Case No. 91–0602–CIV–Graham, based on the debtor's failure to meet its obligation under the note. The Debtor owes the RTC $10,900,000.00 as principal under the note and mortgage together with the accrued interest, taxes, title search expenses and costs expended in protecting the mortgaged property, all of which are fully secured by the mortgage lien.

Thereafter, upon the RTC's verified motion for the appointment of a receiver, or alternatively, for sequestration of rents and profits, an agreed order was entered which provided, among other things, that the debtor deposit into the registry of the Court all of the rents, profits, proceeds or other monies generated by the mortgaged property. The order also postponed the hearing on the appointment of a receiver for a later time. Shortly thereafter, the RTC renewed its motion for the appointment of a receiver because the debtor failed to comply with the agreed order. The debtor responded to the renewed motion with a request for continuance; however, the motion for a continuance was denied by an order dated March 5, 1992. The debtor filed its petition under Chapter 11 of Title 11 on March 16, 1992, the day of the scheduled hearing on the RTC's motion for the appointment of a receiver.

The question presented is whether the case at bar should be dismissed as a bad faith filing. In *In re Panache Development Co.*, 123 B.R. 929 (Bankr.S.D.Fla. 1991), this Court adopted the doctrine expounded in *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988), to analyze allegations of bad faith filings. In accordance with *Phoenix*, this Court recognized in *Panache* that good faith was essential to maintaining a petition under Chapter 11.

■ Chapter 11 does not specifically require good faith for the initiation of a petition; but, it is a prerequisite to the confirmation of a plan. *Albany Partners*, 749 F.2d at 674. Section 1112(b) of the Bankruptcy Code authorizes the Court to dismiss a case filed under Chapter 11 for "cause". This provision "lists nine examples of cause, but the list is not exhaustive. The pertinent legislative history states, 'The Court will be able to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases.'" *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984) citing H.R.Rep. No. 595, 95 Cong., 1st Sess. 406 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6392. Hence, *Albany Partners* and its progeny established that § 1112 authorizes the bankruptcy court to dismiss a Chapter 11 case for "cause" if the petition was filed in bad faith. Notably, no particular inquiry for determining whether a petition was filed in bad faith was recognized in the above cited cases. Instead, as noted by *Phoenix:*

> ... the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'

*In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir.1988) citing *In re Albany Partner, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984). Each court listed several factors which were identified as badges of bad faith.

■ The first factor listed by *Phoenix Piccadilly* as evidencing a bad faith filing is whether the debtor has only one asset. In the instant case, the debtor's only asset is the property which was the subject of the foreclosure proceeding in the district court. The debtor's schedule B provides a listing of other personal assets; however, close scrutiny of these assets reveals that the bulk of these are assets generated from the property such as rents deposited into the registry of the district court and account receivables listed as past due rents. Furthermore, the only income the debtor listed in item 1 of its Statement of Financial Affairs is the rents derived from the property. Thus, the only asset of the debtor is the shopping center property and the income it generates.

The second factor enumerated by *Phoenix Piccadilly* is whether the debtor's unsecured creditor's claims are small in relation to the secured creditor's claims. The debtor listed approximately $288,-478.00 of unsecured priority claims and $113,000.00 as unsecured non-priority claims in contrast to $10,900,000.00 in secured claims. Thus, the contrast between the secured and unsecured portions of the debt are significant and satisfy this factor.

Moreover, a closer analysis of the debtor's unsecured claims further evidences the disparity between the debtor's secured and unsecured debt. Specifically, the debtor listed 3 creditors as holding unsecured priority claims, all of which are held by governmental entities. The largest holder of an alleged unsecured claim is the Dade County Tax Assessor holding a claim for $274,478.00. Pursuant to F.S. 197.122(1), "all taxes imposed pursuant to the State Constitution and laws of this state shall be a first lien, superior to all other liens, or any property against which the taxes have been assessed...." Therefore, the alleged largest holder of an unsecured debt is actually a secured creditor pursuant to F.S. § 197.122(1).

The following factor identified is whether "the property is subject to a foreclosure action as a result of arrearage on the debt." *Id.* at 1394. In the instant case, the sole asset of the debtor is the subject of a pending foreclosure proceeding wherein the RTC's motion for the appointment of a receiver is pending. These proceedings have been stayed as a result of the debtor's filing of the bankruptcy petition in this Court. Hence, this factor posited in *Phoenix* is also satisfied here.

Another factor proposed by *Phoenix* is whether the debtor's financial problems stem from a dispute between the debtor and a secured creditor which can be resolved in a state court. The debtor's financial problems essentially involve a dispute between the RTC, the secured creditor, and the debtor, which can be resolved in the pending foreclosure proceeding in the district court. Thus, the debtor's financial difficulties arose from its dispute with its only secured creditor, the RTC.

The final factor enunciated by *Phoenix* was whether "the timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate effort of the Debtor's secured creditors to enforce their rights" *Id.* at 1394. The clearest indicator that this petition was filed with an intent to delay the legitimate efforts of the RTC is that it was filed after the debtor's attempt to continue a hearing on the RTC's motion to appoint a receiver was denied. Furthermore, the debtor filed the petition on the same day of the hearing to appoint the receiver. Thus, the facts of this case clearly evidence an intent to delay the efforts of the RTC, the secured creditor.

■ The debtor's counsel contends that the doctrine of *Phoenix* and its progeny is inapplicable to the debtor since the debtor is a general partnership and can compel contribution from its general partners. *Phoenix* considered a bad faith filing by limited partnership; the cases that followed *Phoenix* considered the applicability of this issue not only to partnerships, but to corporations as well. *See Panache Development Company, Inc.* 123 B.R. 929 (Bankr.S.D.Fla.1991); *In re Maricamp Square Associates, Ltd.*, 139 B.R. 554, 22 B.C.D. 1468 (Bankr.M.D.Fla.1991); *In re Carco Partnership*, 113 B.R. 735 (Bankr. M.D.Fla.1990). The Court does not consider this reasoning compelling and is unpersuaded by this distinction. The proposition advanced by the debtor only addresses the question of whether the debtor has a realistic probability of reorganization and does not squarely address the badges of bad faith evident in the petition. This argument is inconsequential at this stage since classifying the debtor as a corporation or partnership is irrelevant to the bad faith analysis.

Notwithstanding the partners possible contributions to the partnership, this influx of capital would at best give the debtor a prospect of reorganization. This argument, based on the probability of reorganization due to the general partners contributions, does not address the fundamental

ideal expounded in *Phoenix* and *Panache* which is:

> the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition is bad faith would fail to meet section 1129's good faith requirement. *[In re Natural Land Corp.,]* 825 F.2d [296] at 298 [ (11th Cir.1987) ]. *The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith.*

*In re Phoenix Piccadilly Ltd.,* 849 F.2d 1393, 1395 (11th Cir.1988) (emphasis added).

     The Court is most cognizant of its unique responsibility of protecting the integrity of the bankruptcy system by preventing abuse of the reorganization and judicial process. A single asset debtor, wearing all the badges of bad faith, whether a corporation or a general partnership, cannot avail itself of the bankruptcy process at the expense of its secured creditor. Accordingly, it is

**ORDERED AND ADJUDGED** that the RTC's Motion to Dismiss the Chapter 11 proceeding is hereby granted and the instant case is hereby dismissed with prejudice to the Debtor filing a petition under any Chapter of Title 11 for a period of one year from the date this order becomes final.

    **DONE AND ORDERED.**