**In re COLONIAL MANOR ASSOCIATES, LTD., a Georgia limited partnership, Debtor.**

**Bankruptcy No. 89–1660–BKC–3P1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 31, 1989.

Michael E. Demont, Jacksonville, Fla., David N. Reed, Davis, Meadows, Owens, Collier & Zachary, Dallas, Tex., for debtor.

Paul M. Glenn, Jacksonville, Fla., Julia Dobbins, Shannon, Gracey, Ratliff & Miller, Fort Worth, Tex., for Movant Fairway Manor Investors, Ltd.

William J. Deas, Jacksonville, Fla., Gregory A. Lowry, Locke, Purnell, Rain, Harrell, Dallas, Tex., for John Hancock Mut. Life Ins. Co.

Mark Agee, Johnson & Swanson, Dallas, Tex., for US Tee.

Lynne L. England, U.S. Trustee, Tampa, Fla.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the Motion for Relief from the Automatic Stay filed by Fairway Manor Investors Limited ("Investors"). Hearings on the motion were held on July 10 and July 13, 1989, and upon the evidence presented, the Court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. This motion by a secured creditor for relief from the automatic stay is to continue a mortgage foreclosure action in the Duval County, Florida, Circuit Court to enforce a lien on debtor's real property and to secure the rents therefrom.

2. The debtor, Colonial Manor Apartments Associates, Ltd., a Georgia limited partnership, filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Texas on March 3, 1989.

3. Debtor's only asset is a 186 unit apartment complex located in Jacksonville, Florida, known as Colonial Manor Apartments (the "Property"). The debtor has continued in possession of the Property as debtor-in-possession.

4. Debtor has no employees.

5. Debtor contracts for the management of the Property with Johnstown Management Company, a management company controlled by Southmark Corporation of Dallas, Texas.

6. Debtor is controlled by Southmark Corporation. The general partner of debtor, Consolidated Capital Realty Corporation, is controlled indirectly through affiliates by Southmark Corporation. Debtor's representative is an employee of Southmark Corporation, whose duties and responsibilities include real estate workouts.

7. The limited partner of the Debtor, Consolidated Capital Properties IV, is a publicly traded limited partnership with approximately 20,000 investors. This limited partnership was formed for the specific purpose of providing capital to purchase properties that are held in single asset entities such as the Debtor in this case. The limited partner of Debtor has invested in approximately forty other "single asset" entities in which it is the "capital providing entity."

8. Because of (i) the Debtor's operational and management structure as outlined above and (ii) the limited purpose of the Debtor's initial formation, the Debtor has asked the Court to consider the individuals of Southmark and Johnstown as employees of the Debtor. The Court rejects this premise and finds that the only true employees of this Debtor are the limited number associated with the day-to-day onsite management of the property.

9. The Property is encumbered by three mortgages. The first mortgage is to John Hancock Mutual Life Insurance Company ("John Hancock") and secures a promissory note with an outstanding balance on the date of filing of the petition of approximately $2,225,000. The second mortgage is to Investors and secures a promissory note with an outstanding balance on the date of filing of the petition of approximately $3,045,000. The second mortgage is a wrap-around mortgage, and the net amount owed to Investors on the date of

filing the petition was approximately $820,000. The third mortgage is to Colonial Manor Partners, Ltd. ("Partners") and secures a promissory note with an outstanding balance on the date of filing of approximately $3,600,000. This is also a wraparound mortgage, and the net amount owed is approximately $555,000.

10. Investors testified that on the date of the hearing, July 10, 1989, the net amounts of principal and interest due John Hancock and Investors were approximately $2,200,000 and approximately $1,100,000, respectively, for a total amount due to the first and second mortgagees of $3,300,000. Adding the third mortgage balance of approximately $600,000 to this, the total secured debt on the Property at the time of the hearing was about $3,900,000.

11. Debtor has total unsecured debt of $10,049.58.

12. The first mortgage note provides for monthly payments of $19,320 to be made until 1993. The second mortgage wraps around this debt, and the second mortgagee, Investors, has kept payments current on the first mortgage obligation.

13. The second mortgage note, to Investors, provided for monthly payments of $31,650 until maturity on October 31, 1988, when a balloon payment in the net amount of approximately $820,000 became due. Debtor has been unable to meet this obligation.

14. The third mortgage note provides for annual payments of $5,000 until it matures on July 1, 2002. All payments are current on this obligation.

15. The Court accepts the testimony of Robert L. Heid, an M.A.I. appraiser who appeared as an expert witness on behalf of debtor, and finds the market value of the Property is $4,500,000.

16. On October 31, 1988, the mortgage note to Investors matured according to its terms, and debtor failed to pay the amount due at maturity.

17. On November 14, 1988, Investors made written demand on debtor for rents pursuant to § 697.07, Florida Statutes, predicated upon the mortgage to Investors which included an assignment of rents.

18. In November, 1988, Investors instituted a foreclosure action relating to the note and the mortgage in the Circuit Court for Duval County, Florida (the "State Court"). Investors filed a Motion for Appointment of Receiver and a Motion for Assignment of Rents in that court.

19. Effective December 6, 1988, debtor and Investors entered an agreement providing that no foreclosure sale would be scheduled prior to March 6, 1989, so that debtor could have additional time to seek refinancing. In the additional three month period, debtor agreed to make certain payments to Investors on the first day of each month. Debtor and Investors agreed that if debtor obtained refinancing, debtor would pay off the Investors' note together with interest at the prematurity rate and certain other sums. Debtor agreed that if it did not obtain refinancing, or if it defaulted on any of the monthly payment obligations, it would waive any defenses to the foreclosure action and not oppose any motions for the entry of judgments in the foreclosure action.

20. On January 12, 1989, pursuant to consent of the parties, the State Court entered an Order entitled "Order Requiring Payment of Rents in Accordance with Assignment" which required debtor to deposit rents into the registry of the State Court subject to the terms of the agreement effective December 6, 1988.

21. Debtor was not able to acquire refinancing prior to March 6, 1989.

22. Debtor issued its check dated March 1 to Investors in the amount of $38,905.82, for the agreed monthly payment. Subsequently, debtor issued a stop payment order to its bank so that the bank would not honor the check when it was presented for collection.

23. On Friday, March 3, 1989, the last business day before the expiration on Monday, March 6, 1989, of the additional time agreed upon for debtor to obtain refinancing, debtor filed this bankruptcy case in the United States Bankruptcy Court for the Northern District of Texas.

24. By Order dated April 19, 1989, venue for this bankruptcy proceeding was transferred from the Northern District of Texas to the Middle District of Florida. Debtor has appealed the Order Transferring Venue, but debtor's Motion for Stay Pending Appeal was denied and the case was transferred in June, 1989.

25. On June 15, 1989, Investors filed this Motion for Relief from the Automatic Stay.

## CONCLUSIONS OF LAW

1. Investors argues that it is entitled to relief from the automatic stay pursuant to: (a) § 362(d)(1) for cause, based both on bad faith in the filing of the petition and by lack of adequate protection of Investors' interest in the Property, and (b) § 362(d)(2) because debtor has no equity in the Property and the Property is not necessary to an effective reorganization.

2. The Court concludes: (i) the debtor has equity in the property; (ii) the debtor has been making payments to Investors in accordance with the Northern District of Texas Court's order regarding cash collateral such that Investors is more than able to keep the first mortgage note current with respect to John Hancock; (iii) the debtor has in excess of $100,000 in its debtor-in-possession account; (iv) the Property generates proceeds sufficient to maintain and cover all necessary operating expenses, and (v) Investors is adequately protected in accordance with the mandate of § 362(d)(1).

3. Following the lead of the Eleventh Circuit Court of Appeals in the cases of *In re Albany Partners*, 749 F.2d 670 (11th Cir.1984), *In re Natural Land Corporation*, 825 F.2d 296 (11th Cir.1987), and *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988), this Court has previously recognized the doctrine that a bad faith filing is cause for relief from the automatic stay under § 362(d)(1). In considering whether or not a voluntary petition has been filed in good faith,

" ... the issue is whether the debtor's invocation of the protection afforded by Chapter 11 is for reasons consistent with the congressional intent of rehabilitating and reorganizing businesses or whether it filed for the purpose of delaying and frustrating (a creditor) from proceeding with foreclosure sale and realizing on his collateral. The burden of proof is on the debtor on all issues except the issue of the debtor's equity in the property." *In re Sar–Manco, Inc.*, 70 B.R. 132, 139 (Bankr.M.D.Fla.1986).

4. It is clear that this is not a case where the debtor is seeking an orderly reorganization of its business for the benefit of its creditors. Payments to all secured creditors except Investors were current, and unsecured debt totaled only about $10,000. This is a case involving a two-party dispute only where the debtor could not pay the mortgage note due to Investors when it came due according to its terms and is using the bankruptcy proceedings to forestall further foreclosure action.

5. With respect to determining bad faith in the filing of a petition, the Eleventh Circuit Court of Appeals has stated:

" ... there is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.' " *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1194 (11th Cir.1988), citing *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984).

The 11th Circuit then set out many of the circumstantial factors which have been identified by courts as evidencing bad faith filings, all of which are present in this case:

(i) The debtor has only one asset, the Property ...

(ii) The debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;

(iii) The debtor has few employees;

(iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the pending State Court action; and

(vi) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*In re Phoenix Piccadilly, Ltd.,* supra, at 1395.

6. The factors listed above, and factors in other bad faith cases, generally fall within three basic categories:

(1) Whether the debtor is actually an operational business enterprise which employs persons in the community and has ongoing business operations that may be rehabilitated or reorganized consistent with the congressional intent and protection afforded by Chapter 11;

(2) Whether the debtor has filed a petition for reorganization on the eve of foreclosure or similar judicial action and bankruptcy offers the only means of forestalling loss of the debtor's business; and

(3) Whether the debtor has a realistic probability of a successful reorganization.

*In re RAD Properties, Inc.,* 84 B.R. 827, 830 (Bankr.M.D.Fla.1988).

In addition to constituting bad faith under the factors outlined in *Phoenix Piccadilly,* the facts of this case clearly show bad faith in view of these three general categories.

7. This debtor is not a business enterprise that may be reorganized or rehabilitated consistent with the congressional intent and protection afforded by Chapter 11. Debtor has only one asset, which is operated by a management company. Although debtor's affiliates may have many employees around the country, this Court finds that it should look at the employees which are related to the debtor's asset and these are few in number, if any.

8. The Court also considers whether or not there are any true unsecured debts and unsecured creditors to be protected by the Court. In this case, there is little unsecured debt and compared to the secured debt it is insignificant. Of paramount significance is that this is a two-party dispute. Debtor suggests that the Court should consider its global reorganization chart and determine that there is more. The Court does not agree. This is nothing more than a secured creditor wanting to foreclose and a debtor wanting to buy time. The issues should be resolved in the non bankruptcy forum.

9. It is obvious that the filing of the petition was to forestall the loss of the debtor's property through foreclosure in State Court. Investors had made written demand for and was entitled to rents according to Florida law, and Investors had obtained an Order of the State Court for payment of the rents into the registry of that Court. Debtor and Investors entered an agreement to postpone a foreclosure sale while debtor sought refinancing. Unable to obtain refinancing, debtor filed its voluntary bankruptcy petition on the last business day before the agreed postponement period was to expire. It is apparent that bankruptcy offered the only means for debtor to postpone the loss of its property. Debtor asserts that it owes a duty of good faith to its limited partners. While that may be true, such limited partners invest with the knowledge that risk is involved and tax laws are subject to amendment.

10. The evidence shows that the debtor has no realistic chance to reorganize. Any reorganization would require refinancing. Debtor and its affiliates are in the business of operating real estate properties in many areas of the country, and debtor has made extensive efforts to obtain refinancing. Debtor's quest for refinancing has been unsuccessful. It has not shown that it has any realistic chance to refinance or to reorganize.

11. *In re Phoenix Piccadilly,* supra, also teaches that the existence of equity in the Property, even if coupled with the pros-

pects of a successful reorganization (which does not reasonably exist here), cannot transform a bad faith filing into one undertaken in good faith.

12. By analyzing the specific facts of this case in view of the factors outlined in *In re Phoenix Piccadilly,* or by considering the three categories into which these facts usually fall, this Court must conclude that debtor's petition was filed in bad faith. This constitutes cause within the meaning of § 362(d)(1) of the Bankruptcy Code for lifting the automatic stay.

13. This Court will enter a separate Order granting relief from the automatic stay.