**In re LORRAINE GUARDIAN, LTD., Debtor.**

**Bankruptcy No. 89–04214.**

United States Bankruptcy Court, N.D. Florida, Pensacola Division.

Sept. 1, 1989.

Jeffrey C. Bassett, Panama City, Fla., for FSLIC.

Edward A. Hutchison, Jr., Panama City, Fla., for debtor.

## MEMORANDUM OF OPINION ON MOTION TO DISMISS

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER was heard on July 26, 1989, on the motion of Federal Savings & Loan Insurance Corporation (FSLIC), as receiver for FirstSouth, F.A. to dismiss this Chapter 11 case as a bad faith filing under the authority of *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988). In connection with hearing on the motion, the Court considered, with no objection by the debtor or any other parties, the transcript of the § 341 meeting of creditors in this case, pleadings on file in the case and argument of counsel.

This case was filed on March 21, 1989, during the pendency of an action by FSLIC to foreclose a first mortgage on the real property owned by the debtor. The debtor, Lorraine Guardian, Ltd. is a Florida limited partnership which has as its sole asset a partially developed piece of real property located in Okaloosa County, Florida. The general partner of debtor is the Lorraine Guardian Corporation, a Florida corporation, the stock of which is owned by various principals of a Colorado corporation by the name of Phelps, Inc. The chairman and CEO of Phelps, Inc. is also the president of Lorraine Guardian Corp., the general partner of this debtor, having taken over that position in mid-March of 1989. This occurred as a result of his and other individuals being associated with Phelps, Inc. gaining control of the debtor's general partner through stock transfers and proxies. In addition to controlling the debtor, Phelps, Inc. is also the second largest creditor, holding a second mortgage on the debtor's property in the approximate amount of 1.8 million dollars and a fourth mortgage in the amount of 2.4 million dollars. The first mortgage in favor of FSLIC is in the amount of 1.8 million dollars. Thus, the facts demonstrate that as response to the foreclosure action by FSLIC which would have the effect of foreclosing all mortgages and interests subordinate to the mortgage of FSLIC, Phelps, Inc. obtained control of the debtor and filed this Chapter 11 petition. This was further established by the testimony of Robert G. Tointon, president of Lorraine Guardian Corporation (and Phelps, Inc) at the meeting of creditors wherein he testified that the purpose of the Chapter 11 petition was to forestall the state court foreclosure proceeding in an effort to salvage for Phelps, Inc. any value in the property which may remain after payment of the first mortgage to FSLIC. Funding for the debtor's attorney's fees in connection with this case was provided by Phelps, Inc.

The record in this case further reveals that for approximately a year prior to the filing of the petition for relief, the debtor did not engage in any substantial activities. The debtor had no employees and did not engage in any business activities whatsoever. The debtor had been attempting to negotiate with the secured creditors but those negotiations had failed and the only way for the debtor and Phelps, Inc. to preserve their interest in the property was to file the Chapter 11 petition. At the time

of the § 341 meeting, the debtor had no plans other than a hope to somehow develop the property and to sell lots for sufficient funds to pay the creditors. The debtor had no appraisals on the property and did not have any plans to obtain an appraisal. The debtor had no intent at that time to raise any additional capital to put into the project.

In addition to the mortgage of FSLIC in the approximate amount of 8.1 million dollars, the property is encumbered by five (5) additional mortgages totalling approximately 7.5 million dollars giving a total debt secured by the real property of 15.65 million dollars.

There is an additional indebtedness of $456,000.00 secured by a pledge of water tap fees in favor of First National Bank & Trust of Okaloosa County. Unsecured claims are minimal totalling approximately $11,000.00. Of the six (6) mortgages on the real property, all but the first to FSLIC and the third to Savers Federal Savings & Loan Association in the amount of 1.9 million dollars are to entities or individuals who are affiliated with Phelps, Inc.

██ As frequently occurs with Chapter 11 cases in this Court, the debtor filed a plan of reorganization and disclosure statement on the day immediately prior to the hearing on this motion to dismiss. Thus, at the hearing on the motion the debtor argued that the Chapter 11 was not filed solely to delay this secured creditor but that there is a genuine desire and ability to reorganize as evidenced by the plan of reorganization. In considering the issue of bad faith in Chapter 11 cases, courts have looked at a number of factors which may evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions". *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394 (11th Cir. 1988). Generally the factors considered by courts fall into three basic categories, the third of which looks to whether the debtor has a realistic possibility of a successful reorganization. *In re Colonial Manor Associates, Ltd.,* 103 B.R. 315 (M.D.FL 1989), citing *In re RAD Properties, Inc.,* 84 B.R. 827, 830 (Bankr.M.D.FL 1988). According-

ly, we will consider the plan and disclosure statement as filed by the debtor in evaluating whether or not this debtor has a realistic probability of a successful reorganization.

The essence of the proposed plan is that Phelps, Inc., the second and fourth mortgagee which also controls the debtor proposes to loan $400,000.00 to the debtor for the development of the infrastructure in Phases 5, 6 and 7 as set forth on a master development plan for the project. This $400,000.00 advance would be a senior lien on the property to be paid ahead of all other outstanding mortgage debt encumbering the project. Lots in those three phases together with lots in two phases already developed would then be marketed for sale as residential building lots with the proceeds of sale to be applied first to repayment of the $400,000.00 development loan and then to the first mortgagee up to a specified release price as set forth in a release schedule agreed to by FSLIC at some time prior to this Chapter 11 case. After payment of the release price to FSLIC on each lot sold, the remaining funds would be used to develop three additional phases in the project. After development of those three phases, the proceeds from the sale of lots would first be applied to payment of the first mortgage debt, and then to payment of the second mortgage after payment in full on the mortgage of FSLIC. Following payment to Phelps, Inc. on its second mortgage, any remaining funds would be divided pro rata between the third through sixth mortgagees and the unsecured creditors. Proceeds from the sale of water taps would go to pay a mortgage of First National Bank and Trust of Okaloosa up to the amount of release prices previously agreed to between the debtor and First National.

The disclosure statement accompanying the plan of reorganization does not give even the slightest hint as to how much or when any creditors will be paid nor does it contain any financial information or projections whatsoever regarding the proposed plan. While the plan proposes that the $400,000.00 loan (erroneously referred to in

the disclosure statement as a cash infusion) from Phelps, Inc. will be used to develop infrastructure, the disclosure statement contains no details as to the use of those funds or the sufficiency of that amount to complete the development of those four parcels. The indication is that the $400,-000.00 will be the least amount necessary to put into the project but there is no cap, thus the first mortgagee is totally unable to discern the extent to which his mortgage would be subordinated under the proposed plan. Of particular note is the failure of the disclosure statement to make any mention of the relationship of Phelps, Inc. with the debtor.

With respect to the provisions contained in the plan proposed by the debtor, it is clear that such plan could not be confirmed over the objection of the first mortgagee, FSLIC. Assuming that FSLIC did not accept the plan as proposed, the plan fails to meet the requirement for confirmation under § 1129(b)(2)(A) of the Bankruptcy Code in that it fails to either provide that FSLIC retains its lien on the property, that its lien attach to any proceeds of sale of the property, or that FSLIC will realize the indubitable equivalent of its claim. *In re Wester*, 84 B.R. 770 (Bankr.N.D.FL 1988). Any attempt by the debtor to force FSLIC through a plan of reorganization to release separate parcels from its lien for a price less than the net proceeds of the sale of such parcels would clearly violate the fair and equitable standards provided for in § 1129(b)(2) of the Code. Thus, the plan and disclosure statement as filed by the debtor does not demonstrate at all that there is a reasonable likelihood of reorganization for this debtor.

Having concluded that this debtor does not have a realistic probability of a successful reorganization, it becomes clear that under the standards as set forth in *Phoenix Piccadilly, supra*, this case should be dismissed. As the Eleventh Circuit has set forth in *Phoenix Piccadilly*, common factors in many bad faith filing cases are as follows:

(i) The debtor has only one asset, the property;

(ii) The debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

(iii) The debtor has few employees;

(iv) The property is the subject of a foreclosure action as a result of arrearages of the debt;

(v) The debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the pending state court action;

(vi) The timing of debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*In re Phoenix Piccadilly, Ltd.*, supra, at 1395. All of the foregoing factors are clearly present in this case, and we find that this petition was filed in bad faith and accordingly it should be dismissed.

A separate order will be entered in accordance herewith.