**In re STATE STREET HOUSES, INC., Debtor.**

**No. 02–33876.**

United States Bankruptcy Court, S.D. Florida.

Dec. 3, 2002.

---

14. *First American Bank & Trust v. Butler Machinery Co. (In re Haugen Construction Ser-* *vices, Inc.), 876 F.2d 681, 682 (8th Cir.1989).*

Paul E. Gifford, Esq., Leslie Gern Cloyd, Ft. Lauderdale, FL, for debtor.

Michael K. Bakst, Esq., West Palm Beach, FL, Daniel F. Brown, Esq., Buffalo, NY, Robert N.H. Christmas, Esq., Christopher J. Porzio, Frank W. Ryan, New York City, John W. Dillon, Utica, NY, D. Bruce Kratz, Esq., Jupiter, FL, for creditor.

### ORDER GRANTING MOTION TO DISMISS CASE

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS MATTER came before the Court on October 3, 2002 upon a hearing on the Motion of New York State Urban Development Corporation ("UDC") *et al.* to Dismiss Petition or to Transfer Case filed on September 10, 2002 by UDC, New York

State Mortgage Loan Enforcement and Administration Corporation ("MLC") and New York State Project Finance Agency ("PFA"). On September 30, 2002, the debtor filed its Memorandum of Opposition to the motion to dismiss and/or transfer venue. Thereafter, on October 1, 2002, the New York State Division of Housing and Community Renewal ("DHCR") filed its Joinder to the Motion by UDC to Dismiss this Chapter 11 Proceeding or to Change Venue. On the same date, Creditor, State Street Associates, L.P. ("Associates"), filed its Response in Opposition to UDC's Motion to Dismiss or Transfer Venue of Chapter 11 Proceeding. On October 2, 2002, both the County of Oneida, New York and the City of Utica, New York filed separate Joinders to the Motion by UDC to Dismiss this Chapter 11 Proceeding or to Change Venue. On the same date, MLC, UDC, PFA, and the Empire State Development Corporation ("ESDC") filed their Reply Memorandum of Law in Further Support of Motion to Dismiss Petition and/or to Transfer Venue. The Court, having reviewed the motion, memorandum of opposition, response, various joinders, and the record, having heard the arguments of counsel, and otherwise being fully advised in the premises, hereby enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Movants, UDC, ESDC, MLC and PFA are New York entities that are governmental agencies or public benefit corporations, which have as their primary function assisting with and enabling real estate and project development throughout New York State, primarily through the provision of funding to qualified developers. (Affidavit of Garry P. Ryan in Support of Motion to Dismiss Petition and/or Transfer Venue ("Ryan Affidavit") at ¶ 4.) Movant, Larry Sutton, is an individual who resides at 315 Aspen Drive, Plainsboro, New Jersey. He is also the former General Counsel for UDC.

Debtor is a New York corporation having offices in care of Lanny A. Horwitz, Attorney, Kennedy Plaza Rental Office, Two Kennedy Plaza, Utica, New York 13502. (Ryan Affidavit at ¶ 5.) Debtor's Petition also lists an address in this District, in care of Mathematical Bridge Corporation, 408 Mariner Drive, Jupiter, Florida 33477 (the "Jupiter Address"). In the Statement of Financial Affairs, Lanny A. Horwitz is listed as the President, Assistant Secretary, Director and sole shareholder of Debtor. The Jupiter Address is the location of Horwitz's home, and a small office used by the Debtor and Associates. Debtor is the "bare legal title" owner of the Kennedy Plaza Apartments ("Kennedy Plaza"), a seventeen floor high-rise residential apartment building located in Utica, New York. In its Petition, Debtor lists the location of its principal asset(s) as "Two Kennedy Plaza, Utica, New York 13502."

Associates is a New York limited partnership which has offices at Rental Office, Two Kennedy Plaza, Utica, New York. (Id. at ¶ 6.) Associates is the equitable owner of Kennedy Plaza, which was built in or around 1970. Id.

UDC extended to Associates and Debtor a loan in the original principal amount of $8,105,000.00, with the debt and interest accruing thereon secured by a mortgage dated July 21, 1971 on the Kennedy Plaza premises ("Initial Mortgage"). An Additional Mortgage by and between Houses and UDC dated May 2, 1978 was thereafter executed and recorded ("Additional Mortgage") securing a loan in the amount of $66,000.00 and interest accruing thereon. The Initial Mortgage and Additional Mortgage were later consolidated and

thereafter, on or about July 31, 1985 another addition to the original note and mortgage was made in the amount of $8,000.00, resulting in a Final Mortgage Determination of $8,179,000.00. (*Id.* at ¶ 7.) The terms of the financing relationship were subsequently amended and modified numerous times over nearly twenty years, and several other loans and/or restructurings were extended to Debtor and Associates by Movants. These loans and/or restructurings were also secured by additional mortgage liens on the Kennedy Plaza premises (all indebtedness hereinafter referred to collectively as the "Mortgage"). Currently, the Mortgage is being administered by MLC, as Attorney–in–Fact for UDC and the PFA. (*Id.* at ¶ 9.)

## A. The Sarabond Litigation

In 1983, Associates, UDC, MLC and PFA, along with owners and others holding interests in other properties, commenced a civil action in the United States District Court for the Southern District of New York captioned *New York State Urban Development Corp. et al. v. Dow Chemical Company, Inc., et al.*, 83 CV 4327(VLB) (the "Sarabond Litigation"). That action was brought against Dow for the failure of its defective "Sarabond" mortar additive product, which was utilized in the construction of the Kennedy Plaza premises. The action sought compensatory and punitive damages from Dow. (*Id.* at ¶ 10.)

By a Loan Restructuring Agreement dated as of July 31, 1985, Associates assigned to UDC any award it might receive or any portion of a settlement it might receive in the Sarabond Litigation, and UDC, PFA, MLC, Associates and Houses agreed to an allocation of any such settlement proceeds. (*Id.* at ¶ 11.) The second priority under the allocation was that $2,173,800 (the "Settlement Funds") plus

accrued interest would be paid by UDC from the settlement proceeds to the United States Department of Housing and Urban Development ("HUD") on the HUD Flexible Subsidy Loan (the "HUD Loan") that Debtor and Associates had taken out to make the repairs occasioned by the defective Sarabond product. *Id.* The purpose of this Loan Restructuring Agreement was to give Associates and Debtor an opportunity to cure various defaults under the mortgage. *Id.*

UDC, MLC, PFA and Associates entered into a Settlement Agreement with Dow dated April 10, 1991, under which Dow was to pay $20 million to the plaintiffs in the Sarabond Litigation. (*Id.* at ¶ 12.) Based on and pursuant to the Settlement Agreement, in April of 1991, District Judge Broderick ordered the Stipulation and Order of Dismissal executed by attorneys for the parties to the Sarabond Litigation. (*Id.* at ¶ 13.) An Amendment to the 1985 Loan Restructuring Agreement, dated July 31, 1991, revised the priorities for the allocation by UDC of the Sarabond Litigation's settlement proceeds slightly, making the payment to HUD of the Settlement Funds the first priority thereunder. (*Id.* at ¶ 14.) Under the 1985 Loan Restructuring Agreement, UDC, MLC and PFA afforded Debtor and Associates a forebearance period of 10 years from the closing date of the financing (*i.e.*, until 1995) under which Movants would not commence an action to foreclose the Mortgage or accelerate the debt for certain types of defaults. (*Id.* at ¶ 15.) The 1991 Amendment to that Loan Restructuring Agreement extended that forebearance period an additional five years to expire on July 31, 2000. *Id.*

## B. Default is Declared

Following the expiration of the forebearance period, UDC, on behalf of Movants,

sent Associates and Debtor a default notice dated April 9, 2002. The First Default Notice was sent to the attention of Lanny Horwitz on behalf of both Associates and Debtor. (*Id.* at ¶ 16.) The First Default Notice referenced a number of defaults,[1] and also alleged a long history of Debtor's and Associates' failure to live up to their obligations under the mortgage, as well as Movants' forebearance:

> This loan relationship has had a lengthy history of continued attempts to permit [Associates and Houses] the opportunity to cure various defaults at various times. In 1985 we entered into a comprehensive workout plan evidenced by that certain Loan Restructuring Agreement dated as of July 31, 1985 (as subsequently amended, the "LRA"). By its terms, the forebearance period established under the LRA expired on July 31, 2000. For a number of years, [Associates and Houses have] been unable to operate the Project by timely paying taxes and debt service.

(*Id.* at ¶ 19.)

In response to this First Default Notice, Debtor and Associates sent a letter dated April 18, 2002, which generally took issue with the events of default cited by Movants and asserted the offset for the money which Associates and Debtor contended never was paid to HUD, plus interest. (*Id.* at ¶ 20). The letter was signed by Lanny Horwitz on behalf of both Associates and Debtor. *Id.*

## C. The Federal Action is Commenced

Shortly after the First Default Notice, on April 22, 2002, Debtor, Associates and Horwitz commenced an action in the United States District Court for the Southern District of New York captioned *State Street Houses, Inc., et al. v. New York State Urban Development Corporation, et al.*, 02–CV–3036 (Pauley, J.) (the "Federal Action"). (Declaration of Christopher J. Porzio, Esq. in Support of Motion to Dismiss Petition and/or to Transfer Venue ("Porzio Declaration") at ¶ 4.) That action focused almost exclusively on the alleged failure of Movants to make payment to HUD of the Settlement Funds toward Debtor's and Associates' obligation owed on the HUD Loan. (*Id.* at ¶ 4; Ryan Affidavit at ¶¶ 21–25.)

Upon the filing of the Federal Action, Debtor, Associates and Mr. Horwitz brought on by Order to Show Cause a motion for a preliminary injunction, which would have prevented Movants from taking any steps to foreclose on the Kennedy Plaza premises or to have a receiver appointed during the pendency of the Federal Action. (Porzio Declaration at ¶ 5.) In response to that motion, Movants (the defendants in the Federal Action) opposed the motion and cross-moved to dismiss the complaint. (*Id.* at ¶ 6.) During the briefing of the motion and cross-motion, Movants agreed to refrain from commencing a foreclosure action with respect to Kennedy Plaza. (*Id.*; Ryan Affidavit at ¶ 22.)

On June 14, 2002, following oral argument, the Honorable William H. Pauley, United States District Judge, granted Movants' motion to dismiss the complaint, and denied Debtor's motion for a preliminary injunction. In so doing, Judge Pau-

---

**1.** The First Default Notice referenced the following defaults by Associates and Debtor: $1,067,081.15 in outstanding principal and $2,947,247.24 in interest owed on the notes secured by the Mortgage, failure to pay taxes when due and payable, failure to maintain the mortgaged premises in good repair and con- dition and failure to make an escrow fund payment in the amount of $861,000.00 required by the supervising agency for the project, the New York State Division of Housing and Community Renewal. (Ryan Affidavit at ¶ 18.)

ley adopted the Movants' argument that the court lacked subject matter jurisdiction to entertain Debtor's, Associates' and Mr. Horwitz's claims, (Porzio Declaration at ¶ 8.), and observed that the plaintiffs had failed to state a viable fraud claim because facts alleged by plaintiffs "amount to little more than intentionally false statements by defendants indicating their intent to perform under the loan restructuring agreement," which "is not sufficient to support a claim of fraud under New York law." (*Id.* at ¶ 9.) District Judge Pauley thereafter incorporated his June 14, 2002 decision into an Order dated June 17, 2002 which dismissed the case in its entirety. *Id.*

Immediately following District Judge Pauley's decision from the bench on June 14, 2002, Debtor, Associates and Mr. Horwitz filed a Notice of Appeal, indicating their intention to appeal that decision to the United States Court of Appeals for the Second Circuit. Thereafter, on or about June 18, 2002, Debtor, Associates and Mr. Horwitz made a motion to the Second Circuit for an injunction pending appeal pursuant to Rule 8(a) of the Federal Rules of Appellate Procedure. Movants consented to refrain from foreclosing on Kennedy Plaza pending the briefing of that motion and oral argument on July 16, 2002. (*Id.* at ¶ 10.)

### D. The Second Default Notice

On or about June 28, 2002, Movants sent another, revised default letter to Debtor and Associates, to the attention of Mr. Horwitz, which noted multiple material defaults by Debtor and Associates with re-

spect to their mortgage obligations owed to Movants, all of which were noted in the First Default Notice. (Ryan Affidavit at ¶ 23.) The Second Default Notice noted specified defaults [2] and also put Debtor, Associates and Mr. Horwitz on notice of Movants' intention to foreclose in the absence of a curing of these defaults, as it provided that "[f]ailure to satisfactorily resolve the listed defaults within 20 days will result in Lender then taking all appropriate and necessary actions under the Mortgage and the other financing instruments held by it to exercise its remedies and to protect its interests in the Mortgaged Property." (*Id.* at ¶ 24.) By the terms of the Second Default Notice, the cure period accorded to Debtor and its affiliates would have elapsed as of midnight on July 18, 2002. (*Id.;* Porzio Declaration at ¶ 11.) It was Movants' intention, in the Second Default Notice, to commence a foreclosure action in the New York State courts in the event Debtor's, Associates' and Mr. Horwitz's motion for an order enjoining Movants from foreclosing pending the appeal of the dismissal of the Federal Action was denied by the Second Circuit, and upon expiration on July 18, 2002 of the aforementioned 20–day cure period. (Porzio Declaration at ¶¶ 9–11; Ryan Affidavit at ¶ 25.)

### E. The Second Circuit Denies Relief to the Debtor

On July 16, 2002, an appellate panel of the United States Court of Appeals for the Second Circuit denied from the bench Debtor's, Associates' and Mr. Horwitz's

---

**2.** The defaults noted in the Second Default Notice include, but are not limited to: debt service arrears of $1,087,164.49 in outstanding principal and $2,993,694.63 in interest owed on the notes secured by the mortgage, failure to pay taxes when due and payable, failure to maintain the mortgaged premises in

good repair and condition and failure to make all escrow fund payments required by the supervising agency for the Kennedy Plaza project, the New York State Division of Housing and Community Renewal. (Ryan Affidavit at ¶ 24.)

motion for an injunction pending appeal. Following the panel's oral decision, counsel for Associates, Debtor and Mr. Horwitz orally requested a rehearing of the motion *en banc,* which was denied from the bench by the panel. The denial of the motion for an injunction pending appeal was embodied in the Second Circuit's Order dated July 18, 2002. (Porzio Declaration at ¶ 12.)

### F. The State Court Action is Commenced

On July 16, 2002, counsel for the Movants, Nixon Peabody LLP, received a Complaint and Order to Show Cause, along with supporting papers, in an action commenced by Debtor, Associates and Mr. Horwitz against Movants in the Supreme Court of the State of New York for the County of New York, captioned *State Street Houses, Inc., et al. v. New York State Urban Development Corp., et al.,* Index No. 02–602589 (Friedman, J.) (the "State Court Action"). (*Id.* at ¶ 13.) The parties in the State Court Action were exactly the same as those in the Federal Action. *Id.* The Complaint in the State Court Action sought a declaratory judgment, *inter alia,* relating to the same Settlement Funds at issue in the Federal Action which purportedly were to have been paid by Movants to HUD, and a determination as to whether Movants should be legally or equitably estopped from declaring a default and foreclosing on Kennedy Plaza and/or appointing a receiver. (*Id.* at ¶ 14.) The Order to Show Cause, returnable on July 17, 2002, brought on a motion seeking to enjoin Movants from foreclosing on Kennedy Plaza or taking steps to have a receiver appointed, the same relief Debtor, Associates and Mr. Horwitz had failed to obtain in the Federal Action. (*Id.;* Ryan Affidavit at ¶ 26.) The July 17, 2002 return date was one day before the expiration on July 18, 2002 of the cure period established by the Second Default Notice.

### G. Debtor Files the Instant Bankruptcy

The debtor commenced the instant bankruptcy by filing a voluntary Chapter 11 petition on July 16, 2002. No further proceedings have occurred in the State Court Action. (Porzio Declaration at ¶ 17.) Notwithstanding that the Suggestion of Bankruptcy served on behalf of Debtor purported to stay the Federal Action as to Debtor, on or about July 29, 2002, Plaintiffs–Appellants in the Federal Action filed with the Second Circuit a Petition for rehearing *en banc* with respect to their motion for an injunction pending appeal. (*Id.* at ¶ 18.)

On August 16, 2002, Debtor commenced an adversary proceeding in this Court captioned *State Street Houses, Inc. v. New York State Urban Development Corp., et al.,* Adversary Proceeding No. 02–3238–BKC–SHF–A which: (1) seeks to recover an allegedly fully matured debt valued at $22,773,278.00, purportedly consisting of the Settlement Funds to which it claims to be entitled from Movants, plus accrued interest, plus interest thereon to the year 2025, the year in which the HUD Loan is due; (2) seeks a determination as to the validity of Movants' Mortgage lien; and (3) seeks an order compelling UDC to approve a fair and reasonable rental increase.

### H. The Debtor's Business and Assets

Debtor possesses only one asset, namely Kennedy Plaza. The first item of purported personal property claimed in Schedule B is the alleged $2,173,809 offset to which Debtor, Associates and Mr. Horwitz have claimed entitlement for the alleged failure to make the payment to HUD on the HUD Loan, which was at issue in the Federal

Action and the State Court Action. It is notable that, pursuant to the 1991 Amendment to the Loan Restructuring Agreement between Movants and Debtor and Associates, the Settlement Funds were assigned to UDC, which in turn obliged itself to pay that sum to HUD when the Flexible Subsidy Loan is due. Thus, the amount due HUD on the HUD Loan which has been retained by Movants cannot be considered to be an asset of Debtor.

Schedule D to the Petition lists several secured claims, all of which are held by the Movants herein, totaling $14,402,914.68. Schedule E lists $17,815,100.00 worth of unsecured claims. The largest unsecured creditor, with a claim totaling a purported $15,271,743.00, however, is Associates, the alleged equitable owner of Kennedy Plaza, and an affiliated insider of Debtor. Further, in the Disclosure of Compensation of Attorney For Debtor, Mr. Gifford, attorney for the Debtor, certifies that the source of the compensation paid to him for his services in connection with this matter is Associates. Also, in the Statement of Financial Affairs, Horwitz is listed as the President, Assistant Secretary, Director and sole shareholder of Debtor. Mr. Horwitz testified that he had served as counsel for the Plaintiffs, State Street Houses, Inc. and State Street Associates, L.P. [and] had also had charge of managing their affairs for the past 31 years, and their relations with [Movants].

Schedule E to the Petition, which lists "Creditors holding unsecured priority claims," has spaces that the Debtor is to mark to indicate it owes wages, salaries or commissions to employees for the 90 days preceding the filing of the Petition, or that it owes contributions to employee benefit plans for the 180 days prior to the filing of the Petition. Debtor has left these spaces blank, indicating it has no employees. Also, during Mr. Horwitz's testimony, he confirmed that Debtor has no employees. It is therefore undisputed that Debtor has no employees. All management of Kennedy Plaza is done through employees of a managing agent entity known as Mathematical Bridge Corporation.

During the Motion Hearing, Mr. Horwitz testified on the record that his home address in Jupiter, Florida is also a business address of Debtor and that he is the President and sole shareholder of Debtor. Mr. Horwitz also testified that the Debtor has always had an office in Utica, New York. It has had a second office in various places, relating to Mr. Horwitz's residence: these places have been variously Buffalo, New York; Detroit, Michigan; Hilton Head Island, South Carolina; and Jupiter, Florida. Mr. Horwitz conceded on cross-examination that there is no business reason for Debtor having one of its offices in Florida, and that is done solely for his convenience. Mr. Horwitz also testified that there is no debtor in possession account in this case because all cash from and relating to the operation of Kennedy Plaza is in the hands of the beneficial owner of Kennedy Plaza, Associates. He testified that Debtor owns only the bare legal title to Kennedy Plaza and has no equitable interests in any hard assets. Mr. Horwitz also testified that the books and financial information for all the affiliated entities, including Debtor, are maintained collectively by him in Florida, by Conn and Company, accountants in Atlanta, and at the Kennedy Plaza rental office in Utica, New York.

## CONCLUSIONS OF LAW

▪ This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and (b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Section 1112(b) of the Bankruptcy Code permits dismissal of a bankruptcy case for cause. 11 U.S.C.

§ 1112(b). Section 1112(b)(2) specifically allows courts to dismiss a chapter 11 for cause for the "inability to effectuate a plan." 11 U.S.C. § 1112(b)(2). As the Eleventh Circuit has held, "[a] case under Chapter 11 may be dismissed for cause pursuant to section 1112 of the Bankruptcy Code if the petition was not filed in good faith." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir.1988); *see also In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984); *In re Midway Invs.*, 187 B.R. 382, 389 (Bankr.S.D.Fla.1995). While there is no particular test for determining whether a debtor has filed a voluntary petition in bad faith, the court in *Phoenix Piccadilly* stated that "the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or in particular, factors which evidence that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.' " *Phoenix Piccadilly*, 849 F.2d at 1394 (quoting *Albany Partners*, 749 F.2d at 674). The court in *Phoenix Piccadilly* identified the following circumstantial factors which evidence a bad faith filing: (1) the Debtor has only one asset, the property at issue; (2) the Debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors; (3) the Debtor has few employees; (4) the property is the subject of a foreclosure action as a result of arrearages on the debt; (5) the debtor's financial problems involve essentially a dispute between the Debtor and the secured creditors which can be resolved in the pending state court action; and (6) the timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights. *Phoenix Piccadilly*, 849 F.2d at 1394–95; *In re A.Z. Servs.*, 208 B.R. 578, 581 (Bankr.S.D.Fla.1997); *In re Midway*, 187

B.R. at 387–88; *In re Investors Fla. Aggressive Growth Fund*, 168 B.R. 760, 767 (Bankr.N.D.Fla.1994). *Sub judice*, this Court concludes that virtually all of the circumstantial factors noted by the court in *Phoenix Piccadilly* and its progeny as evidencing a bad faith filing are present here, making dismissal of the petition for cause appropriate.

## A. Kennedy Plaza is the Debtor's Only True Asset

Notably, "many of the more recent cases which have discussed bad faith as a cause for dismissal have arisen in the single asset real estate context," *In re Star Trust*, 237 B.R. 827, 833 (Bankr.M.D.Fla. 1999), which is precisely the context in which this filing arises. It appears that Debtor has only one true, tangible asset, namely Kennedy Plaza. The only other purported assets listed by Debtor in its schedules are two items of personal property. The first item of purported personal property claimed in Schedule B is the alleged offset to which Debtor, Associates and Mr. Horwitz have claimed entitlement for the alleged failure by Movants to make the payment to HUD on the HUD Flexible Subsidy Loan. This cannot be considered a true asset for two reasons: first, it is an unrealized, contingent offset to which Debtor subjectively believes it is entitled; second, and much more significant, that sum to which Debtor claims entitlement, consistent with the terms of the Amended Loan Restructuring Agreement between Movants and Debtor and Associates, was assigned to UDC and is to be paid by UDC to HUD and not to Debtor.

The second item of personal property claimed in Schedule B is $18,000,000.00 in punitive/exemplary damages, which Debtor "assume[s] to be trebled," and which apparently arises from Debtor's purported claims in the pending adversary proceed-

ing against Movants. Debtor seeks to avoid the application of the numerous single asset real estate bad faith cases decided within this Circuit by arguing that these damages, or more appropriately its "chose in action", consisting of its purported right to recover in the adversary proceeding not only the $2,173,809.00 owed to HUD, but also interest, as well as treble damages under Florida's Civil Theft Law, Florida Statutes § 772.11, and not Kennedy Plaza, is its primary asset. (Answering Affidavit of Lanny A. Horwitz ("Horwitz Answering Affidavit") at ¶ 31.) However, this purported "chose in action" cannot be considered to be Debtor's primary asset. Such an unrealized, contingent claim stands in stark contrast to Kennedy Plaza, which is real property and which even Mr. Horwitz has admitted is Debtor's only tangible asset. Moreover, the evidence before this Court suggests that the funds at issue, namely the $2,173,809.00, are more appropriately considered an asset of HUD and not Debtor because those funds are allocated only to HUD under the terms of the 1985 Loan Restructuring Agreement and the 1991 Amendment. Thus, Kennedy Plaza is Debtor's only asset. Accordingly, the first *Phoenix Piccadilly* factor, that the Debtor has only one asset, is present here, suggesting that the Petition was filed in bad faith.

**B. The Claims of the Non–Insider Unsecured Creditors are Greatly Exceeded in Number and Amount by the Secured Claims**

Schedule D lists several secured claims, all of which are held by the Movants herein, totaling $14,402,914.68. Schedule E purports to list $17,815,100.00 in unsecured claims. The largest unsecured "creditor," with a claim totaling a purported $15,271,743.00, is Associates, which is not only the equitable owner of Kennedy Plaza, but is the obvious affiliated insider and sister entity of Debtor. (Porzio Declara-

tion at ¶¶ 27–34; Ryan Affidavit at ¶ 17.) Associates and any partners it may have, including but not limited to Mr. Horwitz, must be considered insiders of Debtor, including without limitation officers, directors, or persons in control of Debtor. Mr. Horwitz appears to control both Debtor and Associates, Associates is paying for Debtor's counsel in this matter, and the two entities, Associates and Debtor, are inextricably intertwined, most notably in the way in which they together own Kennedy Plaza. Courts applying this second *Phoenix Piccadilly* factor typically disregard unsecured debts owed to insiders, and instead consider only the amounts owed to non-insider, unsecured creditors. *See, e.g., Phoenix Piccadilly,* 849 F.2d at 1395 (finding that "as of the petition date, the debtor had unsecured debt of less than $250,000 and less than $50,000, if its unsecured debt to its affiliated company is excluded"); *In re Midway Invs.,* 187 B.R. 382, 389 (Bankr.S.D.Fla.1995) (determining that "as detailed in the Court's findings set forth above, Midway's unsecured debt to non-insiders is nominal in relations to Aetna's [secured] claim"); *In re Investors Fla. Aggressive Growth Fund,* 168 B.R. 760, 767 (Bankr.N.D.Fla.1994) (stating that "the claims of the non-insider unsecured creditors of roughly $16,000 pales in comparison to the secured $6,000,000 claim of FBM"). Because of Associates' status as an insider of Debtor, the scheduled debt owed to Associates of $15,271,743 must be disregarded for purposes of this motion. What remains are (a) the $14,400,000 of secured claims held by Movants, (b) the unsecured claim held by HUD on the Flexible Subsidy Loan in the amount of $2,543,000.00, and (c) the unsecured claim by the City of Utica, New York (which has joined this motion) for payments in lieu of taxes in the amount of $457,000. As was the case in *Phoenix Piccadilly,* in the in-

stant case, Debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors. This factor, then, also weighs in favor of finding the petition was filed in bad faith.

## C. The Debtor has no Employees and Does Not Conduct any Ongoing Business

Based on Debtor's own Schedules and the admissions of its President, Debtor is a corporate shell, is not a going concern, and has no employees. Debtor has not scheduled any wages, salaries or commissions owed to employees for the 90 days preceding the filing of the Petition, nor has Debtor scheduled any contributions to employee benefit plans owed for the 180 days prior to the filing of the Petition. During the hearing on this motion, Mr. Horwitz confirmed that Debtor has no employees. Thus, this *Phoenix Piccadilly* factor also points toward a finding of bad faith.

## D. Movants were on the Verge of Commencing a New York State Foreclosure Action when Debtor Filed its Petition

It is conceded by all parties that at the time Debtor commenced this proceeding, a foreclosure action was not pending. Movants assert, however, that the primary reasons for that state of affairs were the campaign of litigation commenced on multiple fronts by Debtor and its affiliates against Movants and the accompanying motions which were likely calculated to delay foreclosure. (Porzio Declaration at ¶¶ 4–18; Ryan Affidavit at ¶¶ 21–29.) Movants argue that those litigations are themselves compelling evidence of Debtor's bad faith, and this Court is inclined to agree. As demonstrated by Movants' submissions, including the Affidavit of Garry Ryan, UDC's President, Movants had every intention of initiating a New York State court foreclosure proceeding upon the expiration of the cure period established by the Second Default Notice and

would have done so but for Debtor's filing of this Petition. Accordingly, the mere fact that a foreclosure proceeding was not actually pending, considering that is attributable to acts of Debtor which are themselves evidence of intent to forestall Movants' exercise of rights as secured creditors, does not give this Court any reason to find that this *Phoenix Piccadilly* factor should weigh against Movants or against a finding of Debtor's bad faith.

## E. Debtor's Financial Problems Involve a Two-party Dispute which can and should be Resolved in a New York State Foreclosure Action

The ongoing litigation between Movants and Debtor and its affiliates relating to Kennedy Plaza, Debtor's apparent default on its mortgage obligations, and the fact that Debtor faces no imminent threat from any of its other purported creditors, is compelling evidence that this Chapter 11 filing is a mere two-party dispute relating to real property with Movants, as the mortgagees, trying to foreclose, and Debtor seeking to avoid foreclosure. *See In re Investors Fla. Aggressive Growth Fund,* 168 B.R. 760, 767–68 (Bankr.N.D.Fla.1994) (finding that "the case represents a two party dispute inasmuch as the Debtor was unsuccessful in renegotiating more favorable terms of the mortgage loan with FBM"); *In re Colonial Manor Associates, Ltd.,* 103 B.R. 315, 319 (Bankr.N.D.Fla. 1989) (stating that this case is "nothing more than a secured creditor wanting to foreclose and a debtor wanting to buy time. The issues should be resolved in the non-bankruptcy forum"); *In re Midway Investments. Ltd.,* 187 B.R. at 389 (determining that "Midway faced no imminent threats from other creditors. Its only other pending disputes involve claims brought by Midway against two tenants"). It is conceded by all parties here that the threat of foreclosure and the imminent loss

of Kennedy Plaza, including the likely appointment of a receiver to assume control of the operations of the property during the pendency of that proceeding, was the primary motive for the filing of this Petition. Indeed, at the section 341 meeting, Lanny Horwitz admitted that the threat of foreclosure on Kennedy Plaza is what triggered the filing of this Petition. This is clear evidence of bad faith. *See In re Midway Investments, Ltd.*, 187 B.R. at 389 (finding that this case "is plainly a two party dispute. It is clear that Aetna's request for the delivery of the deed (and Midway's risk of imminent loss of its only asset) was the dominant factor that precipitated Midway's filing, and forced the timing of its filing").

**F. The Timing of the Filing of this Petition Evidences Debtor's Intent to Frustrate Movants' Legitimate Efforts to Enforce their Rights as Mortgagees**

Single asset real estate Chapter 11 filings are routinely dismissed where, as here, it is obvious that the proceeding was commenced solely to prevent mortgagees from foreclosing on the property at issue. *See, e.g., Phoenix Piccadilly*, 849 F.2d at 1394–95 (finding a bad faith filing where petition was intended to forestall foreclosure on debtor's apartment complex); *see also In re Midway Invs.*, 187 B.R. at 389 (finding a bad faith filing in case where Chapter 11 petition was filed to enable debtor to delay having to deliver deed to shopping center to creditor); *In re Colonial Manor Associates, Ltd.*, 103 B.R. 315, 318–20 (Bankr.M.D.Fla.1989) (determining that the case involved a two-party dispute where "the debtor could not pay the mortgage note due to Investors when it came due according to its terms and that the debtor was using the bankruptcy proceedings to forestall further foreclosure action"). The instant petition was filed on July 16, 2002 with the specific intention of preventing foreclosure. As noted above,

Lanny Horwitz admitted as much at the section 341 meeting. Moreover, it was Movants' clearly-expressed intention to commence a foreclosure action in the New York state courts upon denial of the motion by Debtor, Associates and Mr. Horwitz for an order enjoining Movants from foreclosing (pending the appeal of the dismissal of the Federal Action), and upon expiration on July 18, 2002 of the 20–day cure period set forth in that Second Default Notice. (Ryan Affidavit at ¶¶ 24–25.) This timeline of events confirms this Petition was filed to prevent Movants from foreclosing on Kennedy Plaza, which is additional evidence of bad faith. *See Phoenix Piccadilly*, 849 F.2d at 1394 (stating that "the debtor filed this Chapter 11 petition on November 19, 1987, the day before a hearing in the state court action to appoint a receiver for the .... property"); *In re Investors Fla. Aggressive Growth Fund*, 168 B.R. at 764, 768 (noting that the timing of the petition which followed the filing of a foreclosure complaint and immediately preceded a state court hearing on the appointment of a receiver for the subject property evidenced bad faith under the *Phoenix Piccadilly* factors).

In addition, this Court finds that the filing of this Petition in this Court, over a thousand miles from Kennedy Plaza, the Movants, and other creditors, including HUD and the City of Utica, is additional evidence that this Chapter 11 proceeding was commenced in bad faith. *See Phoenix Piccadilly*, 849 F.2d at 1395 (stating that "although perhaps technically proper, the choice to file the petition so far from where the property and creditors are located may itself be evidence of bad faith").

In short, in view of the timing, location and circumstances leading up to the Debtor's filing, the Court concludes that this

filing was made for the sole purpose of preventing Movants from exercising their rights as mortgagees to pursue foreclosure on Kennedy Plaza. Debtor has failed to overcome the showing by Movants which leads to the conclusion that this petition was filed in bad faith. Accordingly, it is

**ORDERED** that

(1) the Movants' Motion to Dismiss the debtor's bankruptcy petition is granted and this bankruptcy case is hereby **dismissed;** and

(2) the remaining relief requested in Movants' motion.is **denied as moot.**